body was superintendent, the defendant was entitled to carefully sift the evidence by cross-examination.

I think this judgment should therefore be reversed, and a new trial ordered, with costs to defendant to abide the event.

PATTERSON, P. J., and SCOTT and LAMBERT, JJ., concur. CLARKE, J., concurs in result.

---

### WEINSTEIN v. SINGER MFG. CO.

(Supreme Court, Appellate Division, First Department. November 8, 1907.)

Appeal from Trial Term.

Action by Sofi Weinstein against the Singer Manufacturing Company. From an order denying defendant's motion for a new trial, it appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, CLARKE, SCOTT, and LAMBERT, JJ.

Henry A. Prince, for appellant.
Alfred S. Katzenstein, for respondent.

PER CURIAM. As we have reversed the judgment in this action and ordered a new trial (106 N. Y. Supp. 517), it is unnecessary to consider the questions presented on this appeal.

The order will be affirmed, without costs.

---

(121 App. Div. 716.)

### NOAKES v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, First Department. November 8, 1907.)

1. RAILROADS—ACCIDENTS AT CROSSINGS—DUTY TO LOOK AND LISTEN—PASSENGERS IN VEHICLE.

A traveler, approaching a railroad track, is ordinarily bound to use both his eyes and ears to discover, if possible, whether a train is approaching before crossing; and this rule applies to a passenger in a vehicle approaching a railroad, as well as to the person in charge of the motive power of the vehicle.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 1055.]

2. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—IMPUTED NEGLIGENCE.

Contributory negligence of the driver or operator of a vehicle is not chargeable against a passenger therein.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Negligence, § 147.]

3. RAILROADS—ACCIDENTS AT CROSSINGS—DUTY TO LOOK AND LISTEN—LIMITATION ON RULE.

In order that failure to look or listen before approaching a railroad crossing shall constitute contributory negligence, it must appear, in addition to the failure to look and listen, that there was nothing in the age, sex, or condition of the person injured, or in the surrounding circumstances, which excused such failure, or would have rendered unavailing any knowledge that might have been acquired.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 1043.]

**4. SAME—ACTION FOR INJURIES—QUESTION FOR JURY.**

In an action against a railroad company for injuries received in a collision between one of defendant's trains and an automobile, in which plaintiff was a passenger, whether, in view of the age and sex of the plaintiff and the surrounding circumstances, she was guilty of contributory negligence, *held* a question for the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 1167.]

**5. SAME—INSTRUCTIONS.**

In an action against a railroad company for injuries sustained in a collision between one of defendant's trains and an automobile, in which plaintiff was a passenger, where, in view of the plaintiff's age and sex and the surrounding circumstances, the question of contributory negligence was for the jury to determine, it was not error to refuse to instruct that if the jury found that if plaintiff had looked along the track she would have seen the approaching train, and if she had then warned the chauffeur of the coming of the train he would have stopped the automobile before it reached a position of peril, such failure to look and listen and warn him constituted negligence on her part which barred a recovery, since the request was in substance a request to find for defendant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 1208.]

**6. DAMAGES—EXCESSIVE DAMAGES—LOSS OF LIMB.**

Where plaintiff, a girl 16 years of age, received injuries resulting in the amputation of her leg, a judgment for $35,000 is excessive.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, § 380.]

Houghton and Clarke, JJ., dissenting.

Appeal from Trial Term.

Action by Margaret Noakes, by her guardian ad litem, against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff, defendant appeals. Reversed, and new trial ordered, unless plaintiff remits excess of verdict over $25,000, but, on that condition, judgment affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Robert A. Kutschbock, for appellant.
Stephen C. Baldwin, for respondent.

INGRAHAM, J.   The plaintiff received serious injuries, which resulted in the amputation of her leg, by a collision between one of the trains upon the defendant's road and an automobile, in which the plaintiff was a passenger, on the 12th day of June, 1904. The jury rendered a verdict in favor of the plaintiff for $35,000, and from the judgment entered upon that verdict the defendant appeals.

The serious question presented is whether the evidence justified the jury in finding that the plaintiff was free from contributory negligence. We are all agreed that the evidence justified a finding that the defendant was negligent, and I shall confine myself to a discussion of the plaintiff's contributory negligence. The accident occurred at Van Cortlandt avenue, contiguous to a station on the defendant's road known as "Van Cortlandt Station." Van Cortlandt avenue runs parallel with the railroad tracks on the easterly side of the tracks. Close to the depot there is a road crossing the track from the west, and on the east of Van Cortlandt avenue is Van Cortlandt Park. On Sunday, June 12, 1904,

at about 5 o'clock in the afternoon, there were two trains due at this station, one going north and the other south to New York, and a large number of people were gathered about the station waiting to take these trains. The father of the plaintiff on that afternoon had visited Van Cortlandt Park in his automobile. This automobile had two seats. The seat in front was occupied by the chauffeur, who was operating the machine, and the plaintiff's father. On the back seat was the plaintiff's mother, a Mr. Reid, and the plaintiff, who was seated in the middle between her mother and Mr. Reid. The chauffeur was an experienced operator of automobiles, and there is no question but that he was competent; and the plaintiff's father was seated by his side upon the front seat. The party had been on Van Cortlandt avenue, on the east side of the railroad tracks, watching a golf game. They then crossed the railroad track through Mansion street to look at some other games on the west side of the tracks, when the plaintiff's father directed the chauffeur to return to the east side of the tracks opposite the golf grounds.

The chauffeur testified that he proceeded along Mansion Road very slowly; that there was a mass of people all along the road, who were hollowing and hooting, boys slinging bats and balls, and making a great deal of noise; that there was a slight hill as he approached the track, up which the automobile was proceeding slowly; that the chauffeur looked towards the north and south for trains upon the defendant's road, but failed to see any; that when he got near to the road he heard a noise, and looked, and saw a train stopping near a water tank on the west track; he was then 25 or 30 feet from the track, and he looked and saw no train coming in the opposite direction on the east track; that the street and the tracks were full of people, and he had to proceed slowly, making his way through the crowd; that he crossed the westerly track in safety, and just as he was crossing the first rail of the easterly or north-bound track he heard a shriek, and that the people appeared to scatter; that he then turned his head, and saw a train approaching from the south; that the front wheel of the automobile was then on the first rail of the north-bound track; that the train then appeared to be about two blocks, or 400 feet, away; that he immediately put on all his power to try and get across in time, and he almost got over the track, when the locomotive struck the rear end of the automobile, severely injuring the chauffeur, killing Mr. Reid, who was seated on the rear seat, and severely injuring Mrs. Noakes (plaintiff's mother) and the plaintiff. The plaintiff's father, who was upon the front seat, testified that he was looking straight ahead and did not notice a train on either track; that the first he knew of the collision was when he recovered consciousness afterwards. The plaintiff's mother, who was seated upon the rear seat alongside of the plaintiff, testified that the first she knew of the accident was that she felt herself going through the air; that she saw the engine when it was about 10 feet away; that she started to tell the chauffeur to stop, but before she could tell him the collision happened. The plaintiff testified that she was at the time of the accident 16 years of age; that she remembered going down the Mansion House Road just before the accident; that the machine was going very slowly at the time; that as they ap-

proached the tracks she was seated in the back of the automobile doing nothing, not looking at anything at all, but was watching the people; that as the automobile was crossing the track it was going very slowly, and she did not remember seeing the train at all; that she remembered seeing a number on an engine right beside her, and that was all she remembered; and the next recollection came when she regained consciousness after the accident. Upon cross-examination she said that she remembered the locomotive just upon her; that there was no opportunity for her to do anything, and she could not and did not do anything. There was no time to speak to the chauffeur. She was also asked whether she did not look either to the right or to the left along the railroad tracks, to which she answered that she did not remember.

The evidence is that from this station the track towards the south upon which this train that collided with the automobile was proceeding was visible for a distance of 2,000 feet from the station, and the objection to the plaintiff's recovery is based upon the fact that, as it does not appear that the plaintiff had looked before crossing the track, she was as a matter of law guilty of contributory negligence which precludes a recovery.

The duty which is imposed upon a passenger in a vehicle crossing a steam railroad track, and the question as to the extent that a passenger in a vehicle is precluded from recovering by reason of the negligence of the driver or person operating the motive power of the vehicle, have been much discussed; but it is settled in this state that the contributory negligence of the driver or operator of the vehicle is not chargeable against a passenger, but that in such a case the passenger is to be judged by the duty that the law imposes upon him under the circumstances existing at the time of the accident. There is no doubt but that a traveler approaching a railroad track is bound before crossing the track to use both his eyes and his ears to discover, if possible, whether a train is approaching. As said by the Court of Appeals in Gorton v. Erie Railway Company, 45 N. Y. 660:

"He may not shut his eyes and stop his ears, and rush on regardless of the peril, and hold the railroad company as the insurer of his life, not only against the acts of its servants, but against his own suicidal negligence. The doctrine has been declared by this court, and reaffirmed, that a traveler approaching a railroad track is bound to use his eyes and ears so far as there is an opportunity, and when, by the use of those senses, danger may be avoided, notwithstanding the neglect of the railroad servants to give signals, the omission of the plaintiff to use his senses and avoid the danger is concurring negligence, entitling the defendant to a nonsuit."

I assume that this rule applies to a passenger in a vehicle approaching a railroad, as well as to the person in charge of the motive power of the vehicle. But it seems to me evident that, in determining in each particular case whether or not a failure to look or listen was negligence that contributed to the accident, the age, condition, and situation of the plaintiff, the existing circumstances, and the condition in which the plaintiff was as she approached the track, are to be considered in determining whether under the particular circumstances of the case a failure to look and listen was as a matter of law contributory negligence. It is clear that it is not in every case that a failure to look or listen would be negligence, as in the case of a passenger in

a street car approaching a railroad track, where the car is entirely under the control and management of those charged with its management, or in the case of a very young child in a conveyance approaching the track; for, as I view it, it must not only appear that there was a failure to look and listen to constitute contributory negligence as a matter of law, but it must also appear that there was nothing in the age or condition of the person injured, or in the attending circumstances, which excused or would have rendered unavailing any knowledge that was acquired by the person injured.

The plaintiff, a girl 16 years of age, was riding in an automobile owned by her father and controlled by her father's servant. No relation of master or servant or principal or agent existed between either the chauffeur, who had the control of the machine, or her father, under whose direction it was being operated. She was not in a position that she could give orders to either, and she was not responsible for the management or control of the conveyance. An examination of a few of the many cases which have discussed this subject will, I think, make it plain, considering the age and sex of the plaintiff and the circumstances under which she was riding in this automobile, that it was a question for the jury as to whether she was guilty of negligence which contributed to the accident.

In Robinson v. N. Y. C. & H. R. R. Co., 66 N. Y. 11, 23 Am. Rep. 1, the court charged the jury that if the defendant was negligent, and the plaintiff was free from negligence, she was entitled to recover, although the driver might be guilty of negligence which contributed to the injury. In discussing the question as to whether this was error, the court said:

"In determining this question it is important to first ascertain the relation which existed between the plaintiff and Gonlon, the driver. It is very clear, and was found by the jury, that the relation of master and servant did not exist. * * * It is, therefore, the case of a gratuitous ride by a female upon the invitation of the owner of a horse and carriage. The plaintiff had no control of the vehicle, nor of the driver in its management. Upon what principle is it that his negligence is imputable to the plaintiff? It is conceded that, if by his negligence he had injured a third person, she would not be liable. She was not responsible for his acts, and had no right and no power to control them. True, she had consented to ride with him; but, as he was in every respect competent and suitable, she was not negligent in doing so."

In Hoag v. N. Y. C. & H. R. R. Co., 111 N. Y. 199, 18 N. E. 648, a husband and wife were riding in a wagon, and were both killed in crossing the defendant's track. The husband was driving, and his wife, for whose death this action was brought, was riding with him, on the way to their home. Nothing was known of the manner of the accident, except that the horse was seen jumping to get across, and did, in fact, escape. The plaintiff was nonsuited. In reversing the nonsuit the court said:

"Her husband seems to have been ordinarily a careful man. Having his wife with him one would think would make him more so. He stopped twice before he crossed the freight track. She was hardly blamable, when both saw the coming train, for thinking and expecting that he would stop again. When she saw that, instead of stopping, he meant to cross, she should have spoken, perhaps; but she may have been so near the engine as to have scarcely had time, or so paralyzed with fright at the impending danger as to have

lost her judgment and prudence for the moment. The degree of care to be exercised varies with circumstances and emergencies. If the deceased was silent, it does not follow as matter of law that she was negligent. Which of the two inferences we have named should be drawn, and, if the latter, whether the surrounding circumstances sufficiently show that the deceased was not in fault, were questions which, we think, should have gone to the jury."

In Brickell v. N. Y. C. & H. R. R. Co., 120 N. Y. 290, 24 N. E. 449, 17 Am. St. Rep. 648, it was said:

"The rule that the driver's negligence may not be imputed to the plaintiff should have no application to this case. Such rule is only applicable to cases where the relation of master and servant or principal and agent does not exist, or where the passenger is seated away from the driver, or is separated from the driver by an inclosure, and is without opportunity to discover danger and to inform the driver of it."

We have it thus established that neither the negligence of the chauffeur nor of the plaintiff's father on the front seat could, under the facts as they here exist, be chargeable to the plaintiff; and the question of contributory negligence must be determined entirely upon the question as to the duty imposed upon the plaintiff, and whether, as matter of law, it can be said she failed to perform that duty. There is also to be considered the age and sex of the plaintiff, considerations that were for the jury in relation to the degree of care with which she was chargeable. Thus, it was said in the case of McGovern v. N. Y. C. & H. R. R. Co., 67 N. Y. 417:

"The rule which requires persons before crossing a railroad track to look to see whether trains are approaching, and that, if they omit to do so and are injured by a collision, which if they had looked would have been avoided, are to be deemed guilty of negligence, is not to be applied inflexibly, and in all cases, without regard to age or other circumstances. The law is not so unreasonable as to expect or require the same maturity of judgment or the same degree of care or circumspection in a child of tender years as in an adult."

I think that the circumstances which are disclosed in this case justified the court in submitting the question as to the plaintiff's contributory negligence to the jury. She was a girl, 16 years of age, riding upon the back seat of an automobile slowly approaching a railroad track, the automobile in charge of a competent chauffeur, and her father, the owner of the automobile, on the seat alongside of him and directing its movements; the automobile proceeding very slowly up an incline towards the track, working its way through a crowd of people, who were almost touching it in all directions, alongside of a depot at which trains on the road stop. The passengers on the back seat of this automobile, distracted by the attention of the crowd in the street, were without authority to control the acts of either of the persons who were upon the front seat, who were controlling the machine, and were justified in relying upon the vigilance and care of those in control of the machine. The age, sex, and surrounding circumstances of the plaintiff presented a question for the jury to say whether it was negligence for the plaintiff not to look, and remove this case from the class of cases which impose an absolute duty upon a passenger in such a vehicle of looking and listening for an approaching train, a violation of which duty is, as matter of law, contributory negligence. I think, there-

fore, that this question of contributory negligence was properly left to the jury.

The defendant also insists that it was error for the court to refuse to charge several requests, which were refused, except as already charged. I think these requests to charge were properly refused, if a failure to look and listen was not, as matter of law, contributory negligence. The court charged the jury that the plaintiff was bound to use all the diligence that was reasonably to be expected from a young woman under the circumstances and in the condition and situation in which the evidence shows her to have been placed; that the jury were to say whether or not she did use such ordinary prudence as is to be expected from a person of her age under the circumstances, or even of a mature person, or any person, riding in an automobile saying: ✗

"If you find that she omitted to do what should be expected from an ordinarily prudent person at that time, if you find that she should have looked down that track, that she should have seen that train, and that she omitted any of these precautions, then she cannot recover in this case, because the accident would at least have been contributed to by her own fault or negligence. She might have avoided it, and did not; and if you find that, why, then, that will end the case then and there."

The jury were, therefore, instructed as a matter of law that if they found that the plaintiff should have looked down the track, and should have seen the train, and that she omitted any of these precautions, then she could not recover. At the end of the charge, at the request of the defendant, the court again charged the jury that they could not find a verdict for the plaintiff unless they first found that the plaintiff exercised all reasonable care on her part. The defendant's counsel then requested the court to charge that if the jury found that if the plaintiff had looked along the north-bound track she would have seen the approaching train, and that if she had then warned the chauffeur of the coming of the train he would have stopped the automobile before it had reached a position of peril from which it could not be removed, such failure to look and warn him constituted negligence on her part which barred her from a recovery in the action.

Assuming that our conclusion is correct that it was a question for the jury as to whether, under all the circumstances, her failure to look was contributory negligence, this request was erroneous, as it in substance instructed the jury that a failure to look and warn the chauffeur constituted negligence on her part which barred a recovery. This request was in substance a request to find for the defendant.

We have examined the other requests to charge, which were refused; but we think, in view of the actual instructions by the court to the jury, that there was no error which would justify a reversal of the judgment. Getting back to the real proposition in the case, it is whether the evidence of a failure of the plaintiff to look up and down the track, considering her age and sex and the surrounding circumstances at the time of the accident, it was, as a matter of law, contributory negligence. If it was not, then I think the case was properly submitted to the jury and the recovery should be sustained.

The jury found a verdict for the plaintiff for $35,000, and after serious consideration a majority of the court has come to the conclusion

that this verdict was excessive, and that it should not be sustained for more than $25,000.

Our conclusion, therefore, is that the judgment and order should be reversed, and a new trial ordered, with costs to the appellant to abide the event, unless the plaintiff stipulates to reduce the recovery to $25,-000, in which event the judgment, as so reduced, and the order appealed from, will be affirmed, without costs of this appeal.

PATTERSON, P. J., and LAUGHLIN, J., concur.

HOUGHTON, J. (dissenting).   I dissent from an affirmance of this judgment.   It is upon their application to this case, rather than upon the existence of the rules of law themselves, that the court differs.   It is well enough, however, to state such rules as are necessarily involved on this appeal.   No rule, I apprehend, is better settled than the one that a single traveler on a highway, whether on foot or in an open vehicle, who seeks damages for injuries from a collision at a railroad crossing, must prove, if of sufficient age and understanding so to do, that as he approached the crossing he looked and listened for approaching trains.   This rule is so strict that where a temporary obstruction to vision arises, as from smoke and steam, he must wait until such obstruction has ceased.   Keller v. Erie Railroad Company, 183 N. Y. 67, 75 N. E. 965.   And the law is so careful that so reasonable a rule shall be observed that when a traveler could have seen an approaching train if he had looked, and testifies that he looked and did not see it, it will deem his testimony incredible as matter of law, and hold him guilty of contributory negligence in failing to exercise ordinary caution.   Dolfini v. Erie R. R. Co., 178 N. Y. 1, 70 N. E. 68. The requirement of proof of looking and listening is such that, where one is killed in such an accident, the testimony of his companion that he looked and listened and did not hear or see the approaching train does not establish the fact that the deceased person would have failed, also, had he looked and listened.   Wiwirowski v. L. S. & M. S. Ry. Co., 124 N. Y. 424, 26 N. E. 1023.

Nor is one relieved from this duty to look and listen because he is riding in a vehicle as the guest of another, where he has the opportunity so to do.   Such is the express holding of Brickell v. N. Y. C. & H. R. R. Co., 120 N. Y. 290, 24 N. E. 449, 17 Am. St. Rep. 648, and I know of no decision overturning the rule there laid down or questioning its correctness.   Hoag v. N. Y. C. & H. R. R. Co., 111 N. Y. 199, 18 N. E. 648, is not to the contrary or less stringent.   In that case the wife was riding with her husband, who was driving, and both were killed. The husband had stopped his horse twice before attempting to cross the tracks, and the presumption was indulged in, from that and other facts, that both saw the approaching train, and that the wife had no reason to suspect that her husband was about to cross in front of it, and hence was not called upon to warn him, and, therefore, that the question of her contributory negligence was one for the jury.   Finch, J., says:

"The deceased and her husband either saw the passenger train approaching as they neared the track, or they did not.   If they did not see it, or, at least,

the deceased did not see it, she was negligent, for she was bound to look and listen, and the facts show that if she had looked she could have seen, and would have seen the approaching train. She had no right, because her husband was driving, to omit some reasonable and prudent effort to see for herself that the crossing was safe. But the strong probability is that she did see the train, and her husband did also, and that he for some reason undertook to cross in its front, miscalculating, perhaps, its distance and speed and his opportunity. She was not bound to suspect that purpose until she saw it being executed. Before that she might reasonably expect him to stop and wait. When she saw that he was about to make the attempt they must have been very close to the track. She was not bound to jump from the wagon. That might seem to her as dangerous as to sit still. She could not be required to seize the reins or interfere with the driver. That is almost always dangerous and imprudent. She might have begged her husband to stop, and we do not know that she did not; but if she did not, and sat silent, it does not follow, as matter of law, that she was negligent."

This carefully chosen language cannot be interpreted as holding that the wife was under no obligation to look and listen for approaching trains. On the contrary, it is expressly said that such was her duty, and that, presumably, she had done so, because the horse had been twice stopped, apparently for no other purpose than observation. Having performed her duty in this respect, and having reason to believe that her husband would not attempt to cross in front of the approaching train, or having no reason to apprehend that he was about to do so, manifestly she was not bound, as matter of law, to jump from the vehicle, or to interfere with his driving, or to do anything further to prevent his sudden and unexpected act.

Confessedly the Hoag Case is upon the border line with respect to proof of lack of contributory negligence. Applying its liberal rule, however, to the case at bar, I think the plaintiff failed to prove freedom from contributory negligence and that the judgment in her favor must be reversed. The plaintiff was 16 years of age, strong, bright, alert, and with good eyesight. She was sitting in the rear seat of an open automobile, which was approaching the track at an extremely slow rate of speed. At a point 30 feet distant from the track the train from which the collision occurred could be seen at a distance of 2,000 feet. The plaintiff did not make any attempt to ascertain whether the train was approaching or not, for she neither looked nor listened for that purpose, but looked only ahead and around the machine. If she or any occupant of the vehicle had looked, they could have seen the train, and the automobile was going so slowly that the chauffeur could have stopped it within a few feet at any moment, and thus averted the horrible catastrophe which occurred. The fact that her father sat in the front seat with the driver of the machine, and that her mother and Mr. Reid sat in the back seat with her, does not and cannot, it seems to me, relieve the plaintiff from proving that she exercised the reasonable and ordinary precaution of looking and listening before she can ask the defendant to respond in damages. Of course, she was not called upon to interfere with the driver in the running of the machine, or to touch any of the levers or springs or to attempt to do so. But it was her duty to look and listen, and if she saw danger, to warn the driver of the fact. Having done this, it might well be said that her duty was ended, and that she was not called upon to do more, even if

the driver persisted in crossing after being warned. But she neither looked and saw the danger of the approaching train, nor attempted to do so, to enable her to give a word of warning, if necessary.

Conceding, however, that the plaintiff was not guilty of contributory negligence as matter of law, I think there was error in refusal to charge which requires a reversal of the judgment. By its various requests the defendant in substance asked the court to charge that, in view of the distractions to the chauffeur and his difficulty in threading his way through the crowd with his machine, it was the duty of plaintiff and the occupants of the car to be on the lookout for an approaching train, and not to rely wholly upon his vigilance in that respect. These specific requests were refused, except as already charged. While the court in its main charge did instruct the jury with respect to the general duty of plaintiff to avoid the accident, he failed to instruct them in the specific manner requested by the defendant, and I think, under the circumstances disclosed, the defendant was entitled to have these specific requests charged. The difficulties under which the chauffeur was laboring in the guiding of his machine were apparent to the occupants of the car. They knew that he was about to cross the railway track upon which a train was likely to be approaching. They saw that his attention was necessarily confined to the propelling and guiding of his car and the avoiding of the pedestrians which surrounded it. Under such circumstances it became peculiarly the duty of the occupants of the car, who had nothing else to do, to be vigilant in the use of their senses with respect to approaching trains. While under many circumstances it might be unwise and even dangerous to interfere, even by suggestion, with the driver of an automobile, there are times and circumstances under which it becomes the duty of occupants and guests in such a vehicle to remonstrate with the driver. The danger attendant upon the careless and reckless driving of such a vehicle is great, and there manifestly comes a time when it becomes the duty of the occupants of the machine to protest against reckless speed or heedless guidance under penalty of becoming a party to such recklessness and heedlessness. Such is the rule with respect to the driving of a horse and carriage in a heedless manner. Meenagh v. Buckmaster, 26 App. Div. 451, 50 N. Y. Supp. 85. So, too, it becomes at times the duty of a passenger to warn the driver of an automobile of approaching outside danger. Especially is this so when it is apparent that his attention is necessarily distracted from the observation of one danger by his attempt to avoid another. While the chauffeur may know much more about managing the machine than the passenger, his vision is usually no better, and his opportunity for observation not so good as that of the occupants of his car. It is at times difficult to start or stop an automobile and to guide it in a proper course, and frequently the driver must give his entire attention to these matters. Under such circumstances the occupant of the vehicle cannot sit supinely and trust to the vigilance of the driver to observe and avoid all outside danger. A situation was proven upon the trial to which the requests to charge particularly applied, and which the charge as given did not meet, and I think it was error for the court to refuse the requests.

The injuries of the plaintiff were very serious and excite extreme sympathy, and the defendant was clearly negligent; but I see no way of affirming the judgment in her favor, except by the ignoring of well-settled rules of law, and I therefore vote for a reversal and the granting of a new trial.

CLARKE, J., concurs.