defendant to defend the action was heretofore granted. If the sum so allowed was insufficient for the purpose of defending the action, the defendant should have applied for a further allowance before the trial of the case, and before expending or permitting her counsel to expend the sums in question, and should not have waited, as she has done, until after the trial is over and the cause decided in her favor. If an appeal should be taken, then, as was said in the McCarthy Case, 137 N. Y., at page 503, 33 N. E., at page 550, upon proper application made, the court would be justified in granting a further allowance, and which might, upon proper evidence offered, be made to comprehend the unpaid items of the past.

The propriety of the expenditures claimed to have been made, as well as the reasonableness of the charges for counsel fee and medical experts, is seriously questioned by the plaintiff; it being claimed in his behalf that he would be entitled to a jury trial with respect to the disputed items of expenditure. But upon this point I do not express any opinion, basing, as I do, the denial of the motion solely upon want of power in the court to order the husband to pay for past services and expenses of counsel.

The motion is therefore denied, but without costs.

---

READ v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, First Department. January 10, 1908.)

1. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—IMPUTED NEGLIGENCE.
    Contributory negligence of the operator of an automobile is not chargeable to a passenger therein.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Negligence, § 147.]

2. RAILROADS—ACCIDENT AT CROSSING—DUTY TO LOOK AND LISTEN.
    Decedent, a man 36 years of age, in full possession of his faculties, received fatal injuries in a collision between an automobile in which he was a passenger and defendant's train at a crossing. If decedent had looked at any time while the train was covering 2,000 feet from the point at which it was visible from the crossing, he must have seen the train, and an exclamation would have prevented the accident. Held, that it was decedent's duty to look and listen to ascertain whether a train was approaching before crossing the track, and that his failure to do so was negligence as a matter of law, precluding recovery for his death.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 1055.]

Appeal from Trial Term.

Action by Sarah C. L. Read, as executrix of the last will of Frank B. Read, deceased, against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff, and from an order denying defendant's motion to set aside the verdict and order a new trial, it appeals. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Alton B. Parker, for appellant.
George W. Weiffenbach, for respondent.

INGRAHAM, J.  The plaintiff's testator lost his life as the result of a collision between an automobile in which· he was riding and one of the trains of the .defendant railroad at the crossing near Van Cortlandt Park in the city of New York on the 12th day of June, 1904. The facts are stated in the case of Noakes v. New York Central & Hudson River Railroad Company (Sup.) 106 N. Y. Supp. 522, which was an action by a passenger in this same automobile who was injured at the same time.  The chauffeur operating the automobile at the time of the accident testified that the automobile crossed a bridge from 175' to 200 feet from the defendant's tracks, from which he could see the railroad tracks to the south for a distance of about 2,000 feet; that he looked towards the south when he was at the bridge to see if there was a train coming from New York, but saw none; that he then proceeded very slowly on an upgrade to the tracks; that about 25 to 30 feet from the tracks there is a steep grade, and the road was crowded with people; that the automobile was proceeding slowly through the crowd towards the track; there was a train that had stopped north from the crossing at a water tank; that the automobile continued towards the track, and just as its front wheel was on the north-bound track—

"all at once the crowd opened up with a shriek and fell to one side, and I just turned my head quick that way (illustrating), and I saw there was a train approaching from the south, and immediately like that it struck that. When I first noticed it, as well as I am able to judge, 1 think it was about perhaps 400—300 or 400—feet, or something of that sort, from our car.  I don't know just how far, but as well as I am able to judge about that distance. * * *  I saw no train until then.  I looked quickly then, and I saw that there was a train coming. * * *  When I first saw that train, I turned on all.the power I had; but it was so sudden that the engine wouldn't take it, of course. * * *  The first time I looked for the train I was at that bridge.  The second time I looked for the train was just as I started up this little incline, this other additional rise.  I was, I should say, about 25 feet, or something like that, from the nearest rail the last time I looked along the track.  When I was 25 feet from the rail I looked for the train, and saw none, and then proceeded to cross. * * *  The auto was going very slow across the tracks.  I was just about moving. * * *  I reached the point where I saw this approaching train 400 feet away, and turned on speed and attempted to accelerate my speed."

On cross-examination the witness said that he could see all parts of the railroad tracks between the bridge and the highway crossing at the station, and that there was nothing to obstruct his view; that no one had given him any warning of the coming of the train ·from the south; that Mr. Read (deceased) did not give him any warning, or call his attention to the train coming, nor did any one else in the automobile give him any warning.

Mr. Noakes, the owner of the automobile, and who was on the front seat with the chauffeur, testified that he did not look either way for the trains, and saw no train coming from the south; that he did not know that he had had an accident until he regained consciousness. Upon the back seat of this automobile was Mrs. Noakes, who was seated on the west side of the back seat.  Miss Noakes was seated next to her mother in the middle, and the deceased was seated on the right side of the automobile towards the direction from which the train which caused the accident was coming.  Mrs. Noakes testified that as the

automobile approached the crossing she did not see a train on the south-bound track, and that the first that she saw of the train was when they were almost across the tracks about 6 feet away from the approaching train; that they were all apparently looking ahead; that the deceased was talking and laughing just before the accident with her daughter, who was seated between them. Miss Noakes testified that she did not remember much about the accident, and did not see any train on the track before she was struck; that she remembered seeing the number on the engine when it was right opposite her; that was all she remembered; that she did not remember what the deceased was doing at about the time they started to cross the track. There was a station just to the north of this crossing at which this approaching train was to stop.

In the Noakes Case we sustained the judgment upon the ground that the age, sex, and situation of the plaintiff in that case, a girl 16 years of age, seated between her mother and the deceased, made it a question for the jury as to whether she was negligent in not looking and seeing the train and warning the chauffeur to stop the automobile before it was upon the track. It was expressly stated that the age and sex of the plaintiff, the situation in which she was placed, and the surrounding circumstances were such that a question was presented as to whether it was negligence for the plaintiff not to look, which was for the jury, and the case was not one of those which imposes an absolute duty upon a passenger in a vehicle of looking and listening for an approaching train, a violation of which is, as matter of law, contributory negligence. We have in this case a man 36 years of age, seated on the back seat of an automobile on the side of an approaching train. For a distance of from 175 to 200 feet he had an unobstructed view of 2,000 feet of the railroad track. When the automobile in which he was a passenger approached the track, the deceased was talking and laughing with a fellow passenger on his left away from the approaching train. He was acquainted with the locality, as the automobile had crossed the track a short time before. The automobile was proceeding very slowly, and the jury would have been justified in finding that a word to the chauffeur would have caused him to stop the automobile, and the accident would have been avoided. It was certainly contributory negligence to place this automobile immediately in front of a rapidly approaching train, where there was nothing to obstruct the view or to prevent those in the automobile from seeing the approaching train; and, while the deceased was not chargeable with the negligence of the chauffeur, it was his duty to look and listen for approaching trains when he was approaching the track, although a passenger, and to prevent so far as he could the chauffeur from crossing in front of the train, and a failure to perform that duty is contributory negligence. Gorton v. Erie Ry. Co., 45 N. Y. 660; Wiwirowski v. L. S. & M. S. Ry. Co., 124 N. Y. 424, 26 N. E. 1023; Dolfini v. Erie R. R. Co., 178 N. Y. 1, 70 N. E. 68; Keller v. Erie R. R. Co., 183 N. Y. 67, 75 N. E. 965. The duty imposed upon the deceased requires that he should look and listen before the vehicle is placed in a position that an accident would result if a train is approaching, and a failure to perform that duty is contributory

negligence that relieves the defendant from liability. Hoag v. N. Y. C. & H. R. R. Co., 111 N. Y. 199, 18 N. E. 648; Brickell v. N. Y. C. & H. R. R. Co., 120 N. Y. 290, 24 N. E. 449, 17 Am. St. Rep. 648.

The special circumstances that existed in the Noakes Case which we thought justified the court in submitting the question of contributory negligence to the jury, namely, the age and sex of the plaintiff who was injured, did not exist in this case, as here the deceased was a man 36 years of age, in full possession of his faculties, and seated in the automobile on the side from which the train was approaching. There is certainly nothing, either in the age, sex, or condition in which the deceased was seated, that excused him from the performance of the duty which the law imposes upon every person approaching a railroad track of taking such measures as may be necessary to ascertain whether or not a train is approaching at such a distance as would make it dangerous to cross the track in front of it. There is not only no evidence that the deceased did look or listen, but the evidence of those in the automobile with him negatives such a conclusion. He was talking and laughing with a fellow passenger upon his left, and it is apparent that, if he had looked at any time while the train was covering the 2,000 feet from the point at which it was visible from the crossing, he must have seen the train, and an exclamation would have caused the chauffeur to stop, and thus the accident would have been avoided. It being the duty of the deceased, although a passenger in the automobile, to look or listen to ascertain whether or not a train was approaching before crossing the track, and a failure to perform that duty being contributory negligence, the failure of the deceased either to look or listen to ascertain whether a train was approaching, or, if he did see an approaching train, his not taking any means to have the automobile stopped or avoid the accident, establishes affirmatively that he was guilty of contributory negligence, and a judgment in favor of his representatives cannot be sustained.

Sherwood v. N. Y. C. & H. R. R. Co., 120 App. Div. 639, 105 N. Y. Supp. 547, was an action by the representatives of a boy 16 years old, who was killed by a collision between one of the defendant's trains and an automobile in which he was riding. A judgment for plaintiff was sustained upon the ground that, considering the age of the boy, it was a question for the jury whether under all the circumstances the deceased conducted himself as a lad of his age ordinarily would; the court holding that the jury were justified in finding that the plaintiff's intestate used all the care which an ordinary lad in his circumstances would have exercised, and that he was not chargeable with contributory negligence as matter of law—a position analogous to that in the Noakes Case, but which has no application to the case at bar.

I think, therefore, that the judgment and order appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.