EUGENE B. WILHELM, as County Treasurer of Livingston County, as Administrator, etc., of SALVATORE COSTA, Deceased, Plaintiff, *v.* LEHIGH VALLEY RAILROAD COMPANY, Defendant.

EUGENE B. WILHELM, as County Treasurer of Livingston County, and Another, as Administrators, etc., of MARIA COSTA, Deceased, Plaintiffs, *v.* LEHIGH VALLEY RAILROAD COMPANY, Defendant.

Fourth Department, December 23, 1925.

**Railroads — actions to recover for death of plaintiffs' intestates who were killed when defendant's train struck automobile truck at railroad crossing in night time — truck was stopped before entering on crossing — plaintiffs' evidence shows that train showed no headlight and gave no warning until an instant before accident — rule that one who looks will be presumed to have seen is not applicable in this case — driver of truck not guilty of contributory negligence, as matter of law — error to grant nonsuit.**

In actions to recover damages for the death of plaintiffs' intestates who were killed when one of defendant's trains struck an automobile truck in which the intestates were riding, at a railroad crossing, it was error for the court to grant defendant's motion for a nonsuit at the close of plaintiffs' cases, since it appears from the plaintiffs' evidence that the automobile truck was stopped before entering on the crossing; that the train showed no headlight and gave no warning until an instant before it struck the automobile truck.

The rule that one who looks will be presumed to have seen cannot be applied in this case, although the evidence by the plaintiffs showed that the intestates

looked before they started on the crossing, since it appears that the accident occurred in the night time and that the train showed no headlight.

It cannot be said as a matter of law that the driver of the automobile truck, who was one of the persons killed, was guilty of contributory negligence, since it appears that he approached the track slowly and stopped before entering on the crossing, looked both ways and then proceeded to cross the track.

SEARS, J., dissents.

MOTION in each action by the plaintiffs therein for a new trial upon a case containing exceptions ordered to be heard in the Appellate Division, Fourth Department, in the first instance, after a nonsuit at the close of the plaintiffs' evidence after a trial before the court and a jury at the Monroe Trial Term.

*William H. MacLean,* for the plaintiffs.

*Hubbell, Taylor, Goodwin & Moser* [*Clarence P. Moser* and *Frank E. Devans* of counsel], for the defendant.

TAYLOR, J.  Plaintiffs' intestates in these two actions were husband and wife; both were killed at a highway crossing by a collision in the night time between one of defendant's trains and an automobile truck operated by intestate Salvatore Costa, in which Maria. Costa was riding on the driver's seat, at the right hand of her husband.  The two actions were tried together.  A nonsuit was granted in each case, and the exceptions taken at the trial were ordered heard in the Appellate Division in the first instance. Plaintiffs are, therefore, entitled to the most favorable inferences deducible from the testimony.  (*Horton* v. *N. Y. C. R. R. Co.,* 237 N. Y. 38.)

The complaints in the two actions are similar.  The first alleged ground of negligence is a failure to have proper warning signals installed and in operation near the crossing.  This claim amounted to nothing on the trial.  The remaining allegation of negligence was that defendant's train was being operated " at a high and excessive rate of speed, in a negligent, careless and reckless manner, without due or proper regard for persons using said highway."  There is no direct allegation of failure to give proper warning of the approach of the train.  However, little was made of this at the trial, it seemingly being understood by all that this last allegation was ample to cover all claims.

At the collision point the defendant's two-track railroad runs about east and west upon a one-degree curve, the northerly side of which is convex, and the highway crosses it practically at right angles.  The truck driven by Salvatore approached the crossing from the north and the train in question came from the west.

It appears that an east-bound train, after passing under a bridge two thousand nine hundred and twenty-seven feet west of the

crossing, was continuously visible in the day time to one approaching the track from the north from a point nine hundred feet away. Salvatore Costa stopped with the front of his truck some five feet from the northernmost rail. The distance between the rails was four and seventy-five one-hundredths feet, the width of the " devil strip " about eight and seventy-five one-hundredths feet. The truck was about twelve feet long. So after the stop the truck went some twenty-three feet before it was hit. It would have had to go over thirty-five feet to have fully cleared. At five miles per hour, this would have taken the truck some five seconds. There was no testimony bearing upon the speed of the train.

The proof shows that the crossing and its dangerous character were discussed just before the truck stopped near the track, so that both decedents had some understanding of the situation. It also appears not only that Salvatore stopped his truck about five feet north of the northernmost rail, but that Salvatore and Maria looked both to the right and left at just about that time, and that Maria did not remonstrate with her husband or do anything actively to avoid danger.

The witness Tenelli, who shortly before the collision passed a truck in his automobile as the truck was stopped just north of defendant's tracks, and the witness Tusa, who was in decedents' truck, each testified that he (she) heard no warning signal except just as the collision occurred. And the witness Speziali, who was seated in the truck facing directly toward the oncoming train, testified that she arose from her seat when the truck neared the track and looked both ways and saw no train coming, that she did not hear a bell ring, that the only whistle sounded was one immediately before the train struck the truck, and that no headlight was shining from the front of the locomotive until just as it hit the truck. This testimony made defendant's negligence a jury question.

Of the authorities cited by defendant in support of its claim of contributory negligence in the intestate Maria (*Barnasky* v. *N. Y., O. & W. R. Co.*, 226 N. Y. 435; *Barry* v. *Rutland R. R. Co.*, 203 App. Div. 287; *Escher* v. *Buffalo & L. E. T. Co.*, 220 N. Y. 243; *Read* v. *N. Y. C. & H. R. R. Co.*, 123 App. Div. 228; *LaGoy* v. *Director-General of Railroads*, 231 N. Y. 191), the last two cases only are at all impressive. But both of them are distinguishable. In both the mishap occurred in the day time. In the *LaGoy* case due and readily discernible warning was given the intestate through shouting and waving of arms by a man at the crossing, and the opportunity for discovering and avoiding danger was ample. In the *Read* case the intestate was laughing and chatting with a fellow-

passenger in the back seat of the automobile upon which he was riding just previous to the collision, his face turned away from the oncoming train; all the testimony as to his behavior indicating complete lack of knowledge of possible danger and complete inattention thereto. The court said that it was one of Read's duties " to prevent, so far as he could, the chauffeur from crossing in front of the train; " and " that a word to the chauffeur would have caused him to stop the automobile and the accident would have been avoided." With the situation confronting Maria Costa — if no warning bell was rung or whistle sounded or headlight shone until an instant before the train hit the truck — there was little opportunity for Maria to pass " a word to the chauffeur." Ofttimes, in fact, a word passed to a chauffeur serves to bring about nervousness and bad driving rather than useful warning and safety.

The facts involved in the case of *Hoag* v. *N. Y. C. & H. R. R. R. Co.* (111 N. Y. 199) were very similar to those with which we are dealing; and under the opinion therein the question of reasonable care in decedent Maria Costa was one of fact. The Hoag opinion was written in 1888, and section 841-b of the Code of Civil Procedure (as added by Laws of 1913, chap. 228; now Decedent Estate Law, § 131, as added by Laws of 1920, chap. 919; Civ. Prac. Act, § 265), placing the burden on defendant of proving contributory negligence in a death case, did not go into effect till September 1, 1913. I quote from the opinion: " She could not be required to seize the reins or interfere with the driver. That is almost always dangerous and imprudent. She might have begged her husband to stop, and we do not know that she did not, but if she did not and sat silent it does not follow, as matter of law, that she was negligent. Her husband seems to have been ordinarily a careful man. Having his wife with him, one would think, would make him more so. He stopped twice before he crossed the freight tracks. * * * When she saw that, instead of stopping, he meant to cross, she should have spoken, perhaps, but she may have been so near the engine as to have scarcely had time, or so paralyzed with fright at the impending danger as to have lost her judgment and prudence for the moment. The degree of care to be exercised varies with circumstances and emergencies. If the deceased was silent, it does not follow, as matter of law, that she was negligent. Which of the two inferences we have named should be drawn, and, if the latter, whether the surrounding circumstances sufficiently show that the deceased was not in fault, were questions which, we think, should have gone to the jury."

The rule that one may not be heard to say that he looked and failed to see what must have been plainly visible (*Dolfini* v. *Erie*

*R. R. Co.,* 178 N. Y. 1) cannot be invoked by defendant. It was night time in the instant case. There is testimony that no warning signal was given. That no headlight was burning on this locomotive until immediately prior to this collision may be improbable, but it is not incredible. The headlight may have been an electric light or one of some other variety. It is common knowledge that artificial lights have their eccentricities, even their temporary lapses from functioning at all. We cannot say as a matter of law that this train was not speeding along entirely unlighted, inside and out, until an instant before it reached this crossing. Defendant may upon a new trial be able to prove conclusively that this could not have been the case; but at present there is no proof of that character. Certainly, judicial notice, extended to its full limit, cannot reach thus far.

As to the question of contributory negligence in decedent Salvatore, we have this situation: The jury might have found that Salvatore knew about the crossing and its dangers; that he was using his faculties of sight and hearing; that he approached the track slowly and stopped within five feet thereof; that at a proper time he looked to his right and his left; that he had his vehicle under proper control; that no whistle was sounded or bell rung on the locomotive, and that no headlight was burning thereon until an instant before it struck the truck. Under that state of facts it cannot be said as a matter of law that Salvatore was guilty of contributory negligence. He " approached the crossing with * * * his mind on the danger; * * * he looked down the track * * * when he was only a few seconds from the crossing and that no train was then in sight. * * * When one who is approaching a railroad crossing is heedless of ordinary precautions; when he fails to observe the rules of conduct which are dictated by common experience and common sense, no question remains for a jury to pass upon. (*Avery* v. *N. Y., O. & W. Ry. Co.,* 205 N. Y. 502.) But it is not the law * * * that one who has once looked from a proper viewpoint must, at his peril, look again before proceeding." (*Carr* v. *Pennsylvania R. R. Co.,* 225 N. Y. 44.)

We find that the court erred in directing a nonsuit as to each defendant. Plaintiffs' exceptions should be sustained and a new trial ordered in each case, with costs of these appeals to the plaintiffs to abide the event.

HUBBS, P. J., CLARK and CROUCH, JJ., concur; SEARS, J., dissents and votes to overrule the exceptions.

In each case: Plaintiff's exceptions sustained and motion for new trial granted, with costs to plaintiff to abide the event.