# THE CHICAGO, LAKE SHORE AND SOUTH BEND RAILWAY COMPANY v. DAUN, ADMINISTRATOR.

[No. 7,915. Filed May 8, 1913.]

1. RAILROADS.—*Crossing Accidents.—Duty to Look and Listen.*— A traveler on approaching a railroad crossing must look both ways and listen attentively for approaching trains or cars, and must do all that a reasonably prudent person would do to prevent a collision before he attempts to cross. p. 387.

2. RAILROADS.—*Crossing Accidents.—Looking and Listening.—Presumptions.*—Where one who is injured in a crossing accident could have seen or heard an approaching train in time to escape, if he had looked and listened, it will be presumed either that he did not look and listen or that he did not heed what he saw or heard, and that he saw what he could have seen had he looked, and heard what he could have heard had he listened. p. 387.

3. RAILROADS.—*Crossing Accidents.—Duty to Look and Listen.*— The exercise of ordinary care requires a traveler to look and listen for an approaching car at points in the highway that are reasonably available for that purpose, and in some instances the exercise of due care may require him to stop and look and listen before attempting to cross the track, but this is usually a mixed question of law and fact to be determined by the jury under proper instructions. p. 387.

4. RAILROADS.—*Crossing Accidents.—Right of Traveler to Rely on Signals.*—A traveler has a right to assume that the statutory crossing signals will be given, but he is not thereby relieved from exercising due care. p. 387.

5. RAILROADS.—*Crossing Accidents.—Duty to Look and Listen in Both Directions.*—As a general rule the courts will not say as a matter of law that a traveler should look and listen at a certain point, or points, but he must look and listen for trains in both directions. p. 388.

6. TRIAL.—*General Verdict.—Answers to Interrogatories.*—A general verdict for plaintiff is a finding in his favor on all the issues presented by the pleadings, and is not overcome by the jury's answers to interrogatories unless they are so antagonistic that they and the verdict cannot coexist upon any reasonable hypothesis. p. 388.

7. APPEAL.—*Review.*—*Verdict.*—*Answers to Interrogatories.*—*Presumptions.*—On appeal all reasonable presumptions and intendments will be indulged in favor of the general verdict, and the jury's answers to interrogatories will be strictly construed against the party moving for judgment on them. p. 388.

8. RAILROADS.—*Crossing Accidents.*—*Verdict.*—*Answers to Interrogatories.*—In an action against a railroad company for death in a crossing accident, where it was shown by some of the answers of the jury to interrogatories that at certain places it would have been possible for plaintiff's decedent to have seen the approaching car, the general verdict for plaintiff is not thereby overcome, since presumptions may be indulged whereby such answers are reconcilable with the verdict, in view of the fact that there was no finding that decedent was familiar with the crossing or that he was aware that he could have seen the track at such points. p. 389.

9. RAILROADS.—*Crossing Accidents.*—*Contributory Negligence.*—*Evidence.*—*Jury Question.*—The absence of contributory negligence may be shown by circumstances as well as by direct evidence; and if different conclusions may be drawn by fair and reasonably intelligent minds from the circumstances proven, the question is one of fact for the jury. p. 389.

From Porter Circuit Court; *Willis C. McMahan,* Judge.

Action by Herman Daun, administrator of the estate of Edward Langman, deceased, against The Chicago, Lake Shore and South Bend Railway Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*F. J. Lewis Meyer,* for appellant.

*Grant Crumpacker, William Daly* and *Watson & Treuthart,* for appellee.

IBACH, C. J.—This action was brought to recover damages arising from the alleged negligence of appellant in causing the death of Edward Langman, appellee's decedent, by negligently running one of its cars over and upon him at a crossing while he was traveling upon a public highway. The complaint consists of a single paragraph, in which it is charged that appellant negligently made and constructed said Trail Creek crossing in a dangerous manner, by reason of the deep cut in said railroad and said highway and embankments on each side of the highway, and that appellant

by its agents, servants, officers and employes carelessly and negligently ran a car from the east, without sounding the whistle or gong, and without giving any signal of its approach whatever, and carelessly and negligently ran its car at said time at the rate of seventy miles per hour upon and against said Langman with such force and violence that he was then and there killed. Appellee obtained a verdict and judgment for $2500.

The only question presented by this appeal relates to the action of the trial court in overruling appellant's motion for judgment on the answers to the interrogatories and appellant insists that these answers show that decedent by his negligence contributed to his injury and death. The answers to interrogatories are in some respects conflicting, but there is no conflict as to the following facts. On February 24, 1909, Edward Langman, the decedent, and his wife Florence Langman were traveling south upon a highway which crosses the defendant's electric railway at a point known as Trail Creek Crossing, near Michigan City. The highway runs north and south, and the railway east and west. The railway runs in a deep cut for a distance of 820 feet to the east of the crossing, and in order to cross the railway at grade the highway was excavated and is in a cut with an embankment to the east. The decedents were in a top buggy, in the daytime, with the side curtains up, driving a gentle horse in a walk at the rate of about four miles per hour. The car struck the rear of the buggy after the horse was entirely clear of the tracks, and threw the occupants out on the south side of the track, killing them, but not injuring the horse. The motorman in charge of the car failed to sound the whistle at the whistling post 800 feet east of the crossing, but saw the horse and buggy when he was about 200 feet from the crossing and then sounded an alarm whistle. No signal of any kind was given before the alarm whistle. When just on the track, Edward Langman, who was driving, looked out from under the curtains, and whipped up the

horse.    The car was traveling 55 miles per hour, and 15 times as fast as the horse.    Both Edward and Florence Langman had good eyesight and hearing.    The car was making a noise that could be heard for a distance of 300 feet. The wind was blowing from the northwest.    Edward Langman did not stop the horse from a distance of 150 feet north of the railway track.    He had traveled over the crossing a number of times before.    The highway cut extended back 60 feet to the north of the track.    There was a fence on top of the bank at the east side of the highway north of the railroad.    At a point about 200 or 300 feet to the east of the highway there was a ridge 14 feet high extending north from the railway.    The right of way was eighty feet wide, the north rail of the track was thirty feet from the north side of the right of way, and the embankment extended southward 10 or 12 feet from the north line of the right of way. There was a panel board fence running up and down in a slanting direction along the slope of the said embankment. The car projected over the north rail of the track $2\frac{1}{2}$ feet. Langman and his wife did not see the car in time to avoid a collision.

Many interrogatories were submitted to the jury asking what decedents could have seen and heard at various observation points, namely, 46, 38, 35, 27, $23\frac{1}{2}$, 20, 19, 18, 16, 14 and 12 feet from the north rail of the track.    To nearly all of these the answers are that the car could not have been seen by decedents at these points, or could not have been seen and heard in time to avoid collision by stopping, and if they had stopped and carefully looked and listened they could not have seen and heard the car in time to avoid the collision.    Appellant relies upon the answers to interrogatories Nos. 159 and 160, which are that if decedents had carefully looked and listened for the car at a point 35 feet north of the north rail of the tracks on the highway, they could have seen and heard the car in time to avoid a

collision on the tracks by stopping.   These answers are nullified by that to No. 170, which is that at a point on the highway 35 feet north from the north rail, the car could have been seen as far east as the second trolley pole from the crossing, a distance of about 247 feet.   When this answer is considered in connection with the answers to 206 and 208 from which it appears that when decedents were 38 feet north of the crossing the car was 570 feet east of it and going at a rate 15 times that of the horse.   From this it follows that when the decedents were at a point on the highway 35 feet north of the north rail, the car was 525 feet east of the crossing, and consequently not within range of their vision.   The answers to Nos. 159 and 160 are in direct conflict with the answer to No. 243, which is that decedents could not have seen the car approaching until after they had passed to the south of the embankment, and according to No. 241, this embankment extended to within 18 or 20 feet of the track.   Appellant also relies upon the answers to Nos. 128 and 129, that from a point on the highway 19 feet north of the north rail, if decedents had carefully looked for the car and diligently and carefully listened for it, they could have heard and seen the car in time to avoid a collision on the track by stopping.   By No. 270 it is found that if the decedents had stopped 19 feet before they reached the north rail, their horse's nose would have been about $4\frac{1}{2}$ feet distant from the side of a passing car.   But the answers to Nos. 120 to 139 show that at points 20, 14, 16, and 18 feet north of the north rail they could not have seen and heard the car in time to avoid the collision by carefully looking and listening, or as is found by the answers to Nos. 112 to 120, by stopping and looking and listening at these same points.   The answer to No. 236 is that decedents would have to be within 12 feet of the north rail in order to have a clear and unobstructed view of the tracks to the eastward.   The answers to Nos. 259 and 260 show that at a point on the highway 19 feet north of the north rail they could not see said car approaching

without looking between the bottom board and the next board of the fence, between which boards there was about six inches space. The answers to interrogatories Nos. 89 and 90, which are in conflict with some others, are that they could not see the car at any point between 19 feet north of the rail and the north rail.

The law imposes upon a person traveling upon a highway when approaching a railroad crossing the duty of looking both ways and listening attentively for approaching trains or cars, and he is required to do all that a reasonably careful and prudent person would do to prevent a collision before he attempts to cross over. "The law presumes, in case of injury of a traveler at a crossing, that if by looking he could have seen, or by attentively listening he could have heard the approaching train in time to escape, either that he did not look and listen, or that he did not heed what he saw or heard, that he saw what he could have seen had he looked, and heard what he could have heard had he listened." *Chicago, etc., R. Co.* v. *Turner* (1904), 33 Ind. App. 264, 267, 69 N. E. 484, and cases there cited. The exercise of ordinary care also requires the traveler to look and listen for an approaching car at points and places in the highway which would be reasonably available for that purpose, where his view of the track would not be cut off, and in some instances in the exercise of due care, the traveler may be required to stop, look and listen, before attempting to cross over a dangerous crossing, but this is usually a mixed question of law and fact, to be passed upon by the jury under proper instructions by the court. 3 Elliott, Railroads §1167; *Malott* v. *Hawkins* (1902), 159 Ind. 127, 134, 63 N. E. 308; *Gray* v. *Pennsylvania R. Co.* (1896), 172 Pa. St. 383, 33 Atl. 697.

However, the traveler is entitled to assume that the statutory signals at the crossings will be given, though this does not relieve him from the exercise of due

care. *Cleveland, etc., R. Co.* v. *Lynn* (1909), 171 Ind. 589, 85 N. E. 999, 86 N. E. 1017; *Cleveland, etc., R. Co.* v. *Van Laninghan* (1913), 52 Ind. App. 156, 97 N. E. 573; *Malott* v. *Hawkins, supra.*

5. And as a general rule the courts will not say as a matter of law that a traveler should look and listen at a certain point, or points. *Cleveland, etc., R. Co.* v. *Harrington* (1892), 131 Ind. 426, 30 N. E. 37; *Cleveland, etc., R. Co.* v. *Lynn, supra; Chicago, etc., R. Co.* v. *Turner, supra; Pittsburg, etc., R. Co.* v. *Lynch* (1909), 43 Ind. App. 177, 87 N. E. 40.

The traveler is under an equal duty to look and listen for trains in both directions. *Cleveland, etc., R. Co.* v. *Wuest* (1908), 41 Ind. App. 210, 83 N. E. 620; *Cleveland, etc., R. Co.* v. *Harrington, supra; Thornton* v. *Cleveland, etc., R. Co.* (1892), 131 Ind. 492, 31 N. E. 185; *Mann* v. *Belt R., etc., Co.* (1891), 128 Ind. 138, 26 N. E. 819; *New York, etc., R. Co.* v. *Robbins* (1906), 38 Ind. App. 172, 76 N. E. 804.

It is insisted by appellant that the jury found by its answers to the interrogatories that the decedent at thirty-five feet and nineteen feet respectively from the north rail of the track, by looking and listening could have seen the car in time to have avoided the collision by stopping, also that the car could have been heard for 300 feet, and that these facts having been so found by the jury, they are so incompatible with the exercise of due care on decedents' part as to entirely overthrow the general verdict.    In the considera-

6. tion of these contentions it must be kept in mind that by the general verdict the jury has found all the issues presented by the pleadings in favor of appellee; also that before the answers to the interrogatories can overcome the general verdict, there must be such antagonism between the two that both can not coexist, upon any reasonable hypothesis.    Furthermore, to support the gen-

7. eral verdict we are permitted to indulge all reasonable presumptions and intendments in its favor, and

to resolve all conflicts between the answers themselves in favor of the general verdict, while on the other hand, we are required to strictly construe the answers to interrogatories against the party moving for judgment on them, notwithstanding the general verdict.   *Consolidated Stone Co.* v. *Summit* (1899), 152 Ind. 297, 53 N. E. 235; *Stoy* v. *Louisville, etc., R. Co.* (1903), 160 Ind. 144, 66 N. E. 615; *Shoner* v. *Pennsylvania Co.* (1892), 130 Ind. 170, 28 N. E. 616, 29 N. E. 775.

Guided by these well-established principles, we are of the opinion that the answers are not of such a character as to warrant us in holding as a matter of law, that Edward Langman was guilty of negligence contributing to his injury and death, which will prevent a recovery by his administrator.   Although the jury finds that at a point 19 feet from the track the car could have been seen and heard, if decedent had carefully looked and listened, yet it was the duty of the decedent to look in both directions for approaching cars, and if he did not look toward the car at the instant he reached the 19 foot point, we are permitted to indulge the presumption in support of the general verdict that some noise or other cause may have attracted his attention in the opposite direction, for the decedent had as much reason to expect a car from the west as from the east, the direction from which it was approaching.   It is not found that the car could have been seen at any other point than this one point, until the horse would be on the track. It is found that it could not have been seen at points 20 and 18 feet from the track.   It is not found that Langman was familiar with the crossing, nor is there any finding from which it can be said that he was aware that the track could have been seen at this particular point.   Therefore, the general verdict and the answers to the interrogatories can be very readily reconciled, and both be permitted to stand.   The absence of contributory negligence may be shown by circumstances as well as by direct evi-

dence, and if different conclusions may be drawn by fair and reasonably intelligent minds from the circumstances proven, the question is one of fact for the jury to determine, and the court will not determine such issue as a matter of law. It would be unfair under all the answers in this case, simply because the jury has found that at one point in the highway at a distance of 19 feet from the track, when the horse was then less than five feet from the track, decedent could have seen the approaching car through a hole in the fence had he looked carefully in that direction, to say that as a matter of law he was negligent, because he did not see the car from that point, and proceeded to cross, especially when it does not appear that he was aware that the track to the eastward could have been seen at this particular point. Our holding is fully supported by the cases previously cited, and also by the following: *Wallenburg* v. *Missouri Pac. R. Co.* (1910), 86 Neb. 642, 126 N. W. 289, 37 L. R. A. (N. S.) 135, and note; *Peirce* v. *Ray* (1900), 24 Ind. App. 302, 56 N. E. 776; *Wieland* v. *Delaware, etc., Canal Co.* (1898), 51 N. Y. Supp. 776, 30 App. Div. 85; *Winstanley* v. *Chicago, etc., R. Co.* (1888), 72 Wis. 375, 39 N. W. 856; *Hubbard* v. *Boston, etc., R. Co.* (1894), 162 Mass. 132, 38 N. E. 366. The answers made by the jury to the interrogatories lack much of finding such clear and culpable negligence on the part of Langman as to warrant this court in holding as a matter of law that he was guilty of contributory negligence, and no case has been cited, neither can we find one sufficiently analogous to authorize such a conclusion.

Judgment affirmed.

NOTE.—Reported in 101 N. E. 731. See, also, under (1) 38 Cyc. 1000; (2) 33 Cyc. 1006; (3) 33 Cyc. 1010, 1012; (4) 33 Cyc. 1027, 1031; (5) 33 Cyc. 1009; (6) 38 Cyc. 1929; (7) 38 Cyc. 1928; (8) 33 Cyc. 1142; 38 Cyc. 1927; (9) 33 Cyc. 1111. As to contributory negligence of persons on track who fail to be on lookout for trains, see 51 Am. Rep. 361. As to contributory negligence as a question for the jury, see 8 Am. St. 849. As to the care and precautions necessary in crossing railroad track generally, see 24 L. Ed. U. S. 403. For failure to give customary signals as excusing nonper-

formance of duty to look and listen, see 3 L. R. A. (N. S.) 391. For a discussion of the failure of a railroad company to give the statutory signals on approaching a crossing as an excuse for a traveler's contributory negligence, see 6 Ann. Cas. 78.