## THE PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY v. DOVE.

[No. 22,833. Filed February 24, 1916.]

1. NEGLIGENCE.—*Injury to Property.*—*Burden of Proof.*—In a negligence case to recover damages for injury to personal property, the plaintiff has the burden to aver and prove not only the negligence of the defendant but that no negligence of his own contributed to the injury.  p. 450.

2. RAILROADS.—*Crossing Accidents.*—*General Verdict.*—*Effect.*—In an action for damages to plaintiff's automobile which was run into by defendant's train at a street crossing, where the complaint alleged negligence in running the train at a speed of forty miles an hour and without giving any signal of its approach to the crossing, in violation of a positive provision of the city ordinance, and that plaintiff exercised the care required of him in approaching and entering upon the crossing, a general verdict for plaintiff was necessarily a finding that plaintiff exercised the care that an ordinarily prudent man would use under the circumstances, and that defendant's train approached the crossing at substantially the speed averred without giving any of the signals of its approach as required.  p. 452.

3. RAILROADS.—*Crossing Accidents.*—*Care Required.*—The duty to use ordinary care to avoid injury in using a street over which a railroad crosses does not ordinarily require the person using the street to stop, but it does require him to look and listen and to exercise ordinary care to select a place where the act of looking and listening will be reasonably effective, and the question of whether, in any case, the proper place for looking and listening was selected is seldom to be determined as a matter of law.  p. 452.

4. RAILROADS.—*Crossing Accidents.*—*Looking and Listening.*—*Contributory Negligence.*—*Question for Jury.*—It is only when ordinarily prudent, impartial and sensible men could reach but one conclusion that the question of whether proper care was exercised in looking and listening for an approaching train can be determined as a matter of law, and when different men equally possessing such qualities might draw different inferences from the facts, it is a question for the jury to determine.  p. 453.

5. RAILROADS.—*Crossing Accidents.*—*Contributory Negligence.*—*Reliance on Defendant's Care.*—Where plaintiff in approaching a railroad crossing with his automobile drove at a careful and restrained speed and stopped to look and listen at a place where one might see a train approaching for a distance of 150 feet, and neither saw nor heard a train approaching, he was not guilty of contributory negligence, as a matter of law in failing to stop again after proceeding eight or ten feet further to a point five or six feet from the track, in view of the fact that an ordinance limited the speed of trains to four miles an hour and required the giving of crossing signals, since under the circumstances he had a right to assume the railroad company would not violate the law. p. 453.

6. RAILROADS.—*Crossing Accidents.*—*Care Required.*—*Automobiles.*—No greater standard of care is required of the driver of an automobile on approaching a railroad crossing than is required of the driver of any other vehicle; the standard of care requisite in all cases being that degree of care which a person of ordinary prudence would use in the particular circumstances. (*Fort Wayne, etc., Traction Co.* v. *Schoeff* [1914], 56 Ind. App. 540, distinguished.) p. 455.

From Superior Court of Marion County (87,685); *Clarence E. Weir*, Judge.

Action by Lee Dove against The Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for plaintiff, the defendant appeals. (Transferred from the Appellate Court under §1405 Burns 1914, Acts 1901 p. 590.) *Affirmed.*

*Samuel O. Pickens* and *Owen Pickens*, for appellant.

*Charles B. Clarke* and *Walter C. Clarke*, for appellee.

Cox, J.—Appellee recovered a judgment against appellant for damages for injury to his automobile alleged to have been caused by the negligent operation of one of appellant's trains at a street crossing in Irvington, a suburb of Indianapolis within the city limits. From that judgment appellant has brought this appeal and relies for reversal on the action of the trial court in overruling its motion for judgment in its favor on interrogatories and answers returned by

the jury with its general verdict for appellee and in overruling its motion for a new trial. Both of these claims of error rest on the contention that the answers to interrogatories and the evidence on which they are based show without conflict that appellee was, as a matter of law, guilty of negligence which contributed to the injury of the property involved in the action. It was averred in appellee's complaint that at the time of the injury complained of appellant owned and operated a line of railroad extending eastward through and beyond the city of Indianapolis; that its tracks crossed Ritter Avenue, a street of the city named, at right angles, and at the crossing place and for some distance west of it the tracks were in a cut from ten to thirty feet deep; that the view of the track to the west, to one approaching on the street from the north, was obstructed by the north bank of the cut by growing trees and bushes and by telegraph poles; that by reason of these obstructions travelers on Ritter Avenue coming to the crossing from the north could not see a train approaching from the west until they had reached a point about ten feet from the tracks; that at the time there was in force in the city an ordinance requiring the ringing of a bell on every locomotive whenever it was moving in or through the city and prohibiting the running of any locomotive or train of cars therein at greater speed than four miles per hour; that at the time, June 20, 1911, at about 7:30 o clock p. m., appellee was driving his automobile from the north of the crossing southward over Ritter Avenue at a speed of about five miles an hour and was looking and listening intently for the approach of trains run by appellant over and along its tracks and over the crossing, but by reason of the obstructions did not and could not see any such trains un-

·til after he had come within ten feet of the crossing, when for the first time he was able to see and know that a train belonging to appellant was approaching the crossing from the west; that when appellee was first able to see and know that the train was approaching his automobile was still running about five miles an hour and before he could check and stop it, it ran onto the track on which the train was approaching and was struck and damaged; that appellant's train was negligently and carelessly run by appellant in that it was run at a reckless and dangerous speed of forty miles an hour, and that the bell was not rung, no whistle was sounded, nor was any signal of its approach to the crossing given; that the injury to appellee's property was caused solely by appellant's negligence as averred and through no fault or negligence on the part of appellee. An answer in general denial of this complaint formed the issue which the jury tried.

This being an action for damages to personal property, the burden was on appellee to aver and prove not only that the injury to his property was caused by the negligence of the appellant but that no

1. negligence of his own contributed thereto. *Cleveland, etc., R. Co.* v. *Tauer* (1911), 176 Ind. 621, 96 N. E. 758, 39 L. R. A. (N. S.) 20. Against the general verdict for appellee, which is necessarily a finding for him on this question, appellant sets up answers to certain of the interrogatories which were submitted to and returned with answers by the jury with the general verdict, and insists that these answers establish facts which show, as a matter of law, contributory negligence on the part of the appellee and therefore overthrow the general verdict on this element of the case and require a reversal and preclude a recovery by appellee.

It appears among other facts not essential to the

determination of the question raised by appellant that appellee lived about two squares south of where appellant's double track railroad crosses Ritter Avenue. He was familiar with the crossing and knew that trains frequently ran over the north track to the west and the south track to the east crossing the street at grade. Between 7 and 7:45 in the evening of the day alleged he was driving his automobile south towards his home. He stopped at a point about fifteen or twenty feet north of the north rail of the north track. This point was about twenty-seven feet north of the center of the south track. At this point a train could be seen approaching from the west on the south track 150 feet away. At this point, however, appellee could neither see the train which struck his automobile which was farther away nor hear it although its exhaust was making a noise, for the reason that the embankment was an obstruction to sight and hearing and the noise of his own motor was an interference with hearing the noise of the approaching train. In connection with these facts positive claim is made that the following interrogatories and their answers indelibly brand appellee with contributory negligence: "45. Could appellee have stopped his automobile before entering upon appellant's tracks at a place where he could have heard the approaching train which struck him in time to have avoided the collision? A. Yes. 46. If you answer the above interrogatory in the affirmative, state where. A. Five or six feet north of the north track. 47. Did the plaintiff stop his automobile before entering upon defendant's tracks for the purpose of seeing, at a place where he could have seen the approaching train which struck him, in time to have avoided the collision? A. No. 48. Could the plaintiff have stopped his automobile before entering upon the defendant's tracks

at a place where he could have seen the approaching train, which struck him, in time to have avoided the collision? A. Yes. 49. If you answer the above interrogatory in the affirmative state where. A. Five or six feet north of the north rail of the west bound track."

We have then before us a case where appellee is asserting a right to recover damages for an injury caused by a breach of duty on appellant's part in running its train at a speed of forty miles an hour over a street crossing and without giving any signals of its approach, in violation of a positive provision of municipal law, while appellee himself was exercising the measure of care which the law imposed upon him in approaching and entering upon the crossing. The general verdict necessarily finds as against these answers to interrogatories not only that appellee exercised the care that an ordinarily prudent man would use to avoid injury under the particular circumstances, but it finds also that appellant's trainmen approached and ran the train upon the crossing at substantially the speed averred without giving any of the signals of its approach as required. It appears to be the theory of counsel for appellant that appellee, in the circumstances of the case, did not absolve himself from contributory negligence by merely driving his automobile at a careful and restrained speed and looking and listening continuously for the danger that might come from an approaching train, which the general verdict finds, but that he was bound, as a matter of law, not only to stop and look and listen but to stop and look and listen at a particular place. And that this place must, to relieve him from the charge of contributory negligence, be one which not only would enable him to discover danger from the running of trains in a

normal and lawful manner, but also to discover an extraordinary danger which might come from a train run at an unlawful speed and without signals required by law. The duty to use ordinary care to avoid injury which is imposed on one about to make use of a street over which railroad trains cross does not ordinarily require him to stop but it does require him to look and listen and to exercise ordinary care to select a place where the act of looking and listening will be reasonably effective. That point, however, in its precise relation to the track in feet, is seldom to be determined as a matter of law. The underlying test being, Was ordinary care used by the traveler in selecting the place in view of the conditions before him and the danger reasonably to be anticipated? It is only when ordinarily prudent, impartial and sensible men could reach but one conclusion that the question becomes one of law. When different men equally possessing such qualities might draw different inferences from the facts as to the existence of contributory negligence then it is not a question of law. *Malott* v. *Hawkins* (1902), 159 Ind. 127, 63 N. E. 308, and cases there cited; *Pittsburgh, etc., R. Co.* v. *Terrell* (1912), 177 Ind. 447, 458, 95 N. E. 1109, 42 L. R. A. (N. S.) 367; *Virgin* v. *Lake Erie, etc., R. Co.* (1913), 55 Ind. App. 216, 101 N. E. 500; *Chicago, etc., R. Co.* v. *Daun* (1913), 53 Ind. App. 382, 101 N. E. 731.

Whether in this case it was necessary for appellee to stop in order to discharge the duty of ordinary care under the circumstances, which devolved on him, we need not inquire, for the answers show that he did stop and look and listen. In selecting the place to stop he was not required to use more than the ordinary care that a reasonably prudent man would exercise for his own protection under the circumstances. Can no conclusion

but that appellee did not do this be drawn from the facts found? When it appears that as he approached the crossing appellee was driving at a careful and restrained speed and that he stopped to look and listen, it is manifest that a jury would be free to find that up to this point he had been vigilant in the use of his senses to avoid danger to the full point required by the law. Was he, then, guilty of contributory negligence in failing to stop again after moving up eight or ten feet to a point five or six feet from the north track? In finding the answer to this question the fact that appellant's trains were limited in speed at that point to four miles an hour and that the municipal ordinance also required signals to be given on the approach of its trains to the crossing must be taken into account. Having used his senses vigilantly up to this point appellee had a right to assume that appellant would violate neither the law limiting the speed nor that requiring signals. *Malott* v. *Hawkins, supra; Pittsburgh, etc., R. Co.* v. *Terrell, supra; Virgin* v. *Lake Erie, etc., R. Co., supra; Chicago, etc., R. Co.* v. *Daun, supra.* There is no answer to any interrogatory to the effect that appellee could not have heard the signals required had they been given. Nor is it found specially that he had knowledge of any violation of the ordinance. It appears from the answers that at the point where appellee stopped one could see a train approaching from the west for a distance of 150 feet. If appellee heard no signals and saw no train within this range of vision it can not be said as matter of law that he was not reasonably prudent in going forward without again stopping at the point five or six feet north of the north rail of the north track. For he might assume that those in charge of any trains approaching would give the signals required and that they would make it conform to the speed limit.

If it did conform to a speed limit of four miles an hour it would be clear that appellee in the ordinary course of things, having only to travel about thirty feet to clear the south track while the train was traveling 150 feet at the rate of four miles an hour, would have been far out of danger before the train reached the crossing and point of collision. Under these circumstances appellee can not, as a matter of law, be held to have been guilty of contributory negligence.

But counsel seem to think that a more rigid rule should be applied to drivers of automobiles and that as to these vehicles the positive duty should be laid upon them to stop and to stop at a point where beyond all question they can see and hear and avoid any danger of approaching trains at street crossings. To sustain this contention counsel cite *Fort Wayne, etc., Traction Co.* v. *Schoeff* (1914), 56 Ind. App. 540, 105 N. E. 924. There was no petition to transfer that case to this court. In some essentials the facts distinguish it from this case. We do not think that it wholly supports the doctrine that the driver of an automobile must in every case and circumstance stop his car and stop at a particular place as a matter of law in order to escape a charge of contributory negligence at railroad crossings of a street, or, that it declares that a rule is to be applied to such means of travel different from that applied to others. It is true that two cases are cited in the opinion in that case which do apply a more stringent rule to automobiles. *New York, etc., R. Co.* v. *Maidment* (1909), 168 Fed. 21, 93 C. C. A. 413, 21 L. R. A. (N. S.) 794; *Brommer* v. *Pennsylvania R. Co.* (1910), 179 Fed. 577, 103 C. C. A. 135, 29 L. R. A. (N. S.) 924. The fact that one is driving an automobile may have an influence on the question of contrib-

utory negligence, just as the number and quali-
ties of horses and the kind of vehicle one is driving
may have; but the standard of care to be used which
is necessary to absolve from contributory negligence
is the same whether the traveler is on foot, on horse-
back, in a wagon, a carriage, an automobile or any
other vehicle. It is that degree of care which one
of ordinary prudence would use in the particular
circumstance. The cases just cited are not generally
followed but the rule which we have just stated is.
*Indiana Union Traction Co.* v. *Love* (1913), 180 Ind.
442, 99 N. E. 1005; *Walters* v. *Chicago, etc., R. Co.*
(1913), 47 Mont. 501, 133 Pac. 357, 46 L. R. A.
(N. S.) 702, note; *Witmer* v. *Bessemer, etc., R. Co.*
(1913), 241 Pa. St. 112, 88 Atl. 314; *Bush* v. *Phila-
delphia, etc., R. Co.* (1911), 232 Pa. St. 327, 81 Atl.
409; *Noakes* v. *New York, etc., R. Co.* (1907), 121
App. Div. 716, 106 N. Y. Supp. 522; *Texas, etc., R.
Co.* v. *Hilgartner* (1912), 149 S. W. (Tex. Civ. App.)
1091; *Roby* v. *Kansas City, etc., R. Co.* (1912), 130
La. 880, 58 South. 696, 41 L. R. A. (N. S.) 355;
*Dickinson* v. *Erie R. Co.* (1911), 81 N. J. L. 464, 81
Atl. 104, 37 L. R. A. (N. S.) 150; *Pendroy* v. *Great
Northern R. Co.* (1908), 17 N. Dak. 433, 117 N. W.
531. See, also, 2 R. C. L. 1205, §42. What we have
said disposes of the question arising on the overruling
of appellant's motion for a new trial. The judg-
ment is affirmed.

Note.—Reported in 111 N. E. 609. As to duty of traveler, after
looking both ways on approaching railroad track, to look again just
before crossing, see Ann. Cas. 1914 A 536. As to accidents to automo-
biles at railroad crossings, see Ann. Cas. 1913 B 680; Ann. Cas. 1915
B 226. See, also, under (1) 29 Cyc 597, 603; (2) 33 Cyc 1142; (3) 33
Cyc 1,000, 1,010; (4) 33 Cyc 1,111; (5) 33 Cyc 1,013, 1,033; (6) 33
Cyc 981.