## THE CHESAPEAKE AND OHIO RAILWAY COMPANY *v.* PATCHETT.

[No. 14,510.   Filed March 17, 1933.]

*Albert H. Cole* and *Holman & Bernetha,* for appellant.

*Robert Thompson* and *Benjamin F. Long,* for appellee.

SMITH, J.—Appellee brought this action against appellant to recover damages for personal injuries and injuries to property, caused by a collision at a public high-

way crossing of one of appellant's trains with a team and wagon driven by appellee.

The case was submitted to a jury in the Pulaski Circuit Court for trial upon a complaint in two paragraphs; the first, for injury and damage to the horses, wagon and harness of the appellee; the second, for personal injuries. Later, before the submission, appellee filed an amended second paragraph of complaint which alleged additional injuries to those detailed in the original compaint, and asked for damages in the sum of $20,000.00.

Trial was had by jury, and a verdict returned in the sum of $5,500.00 on which judgment was rendered against appellant. Appellant duly filed its motion for a new trial which was overruled by the court.

The overruling of this motion for a new trial is the only error presented and raises the questions to be determined in this appeal. There are sixty-eight causes for a new trial set up in the motion, fourteen of which are relied upon and discussed by appellant. These causes for a new trial so presented and relied upon by appellant raise the questions of excessive damages; that the verdict is not sustained by sufficient evidence, and is contrary to law; of error in the giving of certain instructions tendered by appellee, and the refusing to give certain instructions tendered by appellant.

Appellee tendered to the court twenty-three instructions, sixteen of which were given; and appellant tendered thirty-five instructions, twenty-five of which were given. The court of its own motion gave nineteen instructions, making sixty instructions in all that were read to the jury.

There are several questions urged under the assignment of error presented, but, because of the conclusion reached, it will not be necessary to discuss all of them.

In the motion for new trial the appellant raises the question that the verdict is not sustained by sufficient

evidence and is contrary to law. We have reached the conclusion that the evidence shows that the appellee was guilty of contributory negligence as a matter of law, in driving upon the railroad track as appellant's train was approaching the crossing in the manner and under the circumstances as shown by the evidence. A statement of the facts most favorable to appellee is necessary and can best be made by giving the appellee's version of this accident as testified by him upon the trial. The parts of the testimony of the appellee which deal directly with the questions of obstructions to the crossing and his conduct in approaching the crossing at the time of the collision, taken from the briefs of appellant and appellee, follows:

Upon direct examination, appellee said:

"I drove two horses, a wagon with a rack on it. The horses were eight or eight and one-half feet long and the distance between them and the rack was four and one-half feet. The rack was fourteen and one-half feet long. The accident occurred at 1:11 o'clock by my watch; the crystal was broken by the accident. On the east side of the highway at the McCroskey place was a tool shed, barn, chicken house, outhouse, smokehouse and this house; a small orchard between that and the railroad, and peach trees and apple trees there. Corn was in the field down by the right of way and sunflowers planted in the corn. On the south side of the right of way there was some elm trees, pretty high up, which extended over into the right of way; also shrubs and weeds. The elm, shrubs and trees and weeds are not there now. Some of the trees along the highway are gone, as is the corn, foliage and sunflowers. I believe there was a telephone line there. The obstructions extended about thirty-five rods south of the crossing, so that it was practically impossible for a traveler approaching the crossing to see a train approaching from the south. On the west side of the high-

way was an orchard, corn crib, house and barn; also some cottonwood trees. I was standing upon the rack, driving at a walk. I looked for a train, saw none, and started across. I had been listening for trains, and continued to do so. When I first saw the train my horses' front feet were across the north rail of the track. I swung them to the west about eight feet or better when the collision occurred and I received the injuries I spoke about. The whistle was not sounded nor the bell rung."

On cross examination, appellee testified upon this subject as follows:

"I won't say whether I looked east before coming to the McCroskey buildings, although there was nothing to obstruct my view. The obstruction was almost complete from the time I got to the first of the McCroskey buildings until I reached the right of way. When even with the McCroskey house, I looked to the east and saw Mrs. McCroskey standing there on her porch. I couldn't have seen trains if I had looked, but I was watching for them. After passing the McCroskey house, I next looked to the east when my team was five or eight feet over the line and just as I come to the right of way line of the railroad. There were obstructions and I couldn't see the track very far. I looked to the north to see whether there were any cars coming, and then to the west. When I turned my head to the east again four or five seconds later, I discovered the train coming, my horses' front feet being then across the north rail. That was the first time I looked where I could see up the track to the east. I could see 150 feet when at the right of way line and I didn't look again until the front feet of the horses were across the north rail. Four or five seconds elapsed. From the time I looked at the right of way line until I saw the train would be a little more than fifteen seconds. I heard no rumble or roar of the train before I saw it. My hearing was good

that day. I could have stopped my team almost instantly."

Appellee's conditional examination was taken and upon this subject he testified:

"I was going north, watching and looking both ways. The crossing is hid by houses on both sides of the road. I looked to the west, and as I turned my head to the east, the train was right onto me, coming from the east. When I looked to the east, the front feet of the horses were across the north rail. The last time before that when I looked to the east I was just approaching the right of way. At that time I could not see anything. My horses continued to move at the rate of about three miles an hour. Grandma McCroskey's dwelling house is on the east side of the road. I think I looked to the east more than twice after passing the north line of the house, until the horses got to the right of way line."

For a number of years, this court has followed a consistent course in dealing with travelers' conduct at railway crossings where injuries occur. The difficulty that sometimes arises, if there can be said to be any difficulty, is not in the rules of conduct as laid down by the courts, but in the application of the rules to a given case. It will be well to observe some of the rules applicable to this case.

"While the exercise of reasonable care, on the part of a traveler on a public highway about to enter upon a railroad crossing, does not require him to look and listen at any precise distance from the crossing, it does require him to exercise reasonable care to select a place where such acts will be reasonably effective." *Waking* v. *Cincinnati, etc., R. Co.* (1920), 72 Ind. App. 401, 408, 125 N. E. 799, 801.

"Travelers upon a public highway, in attempting to pass over railroad crossings, must look and listen attentively for the approach of trains. If such a traveler, by the exercise of reasonable care, could have seen the approach of a train by looking in time to

have avoided injury, by the use of reasonable efforts, it will be presumed in case he is injured by a collision therewith, that he either did not look, or, if he did look, that he did not heed what he saw." *Waking* v. *Cincinnati, etc., R. Co., supra,* page 407; and cases cited; *New York, etc., R. Co.* v. *Leopold, Admr.* (1920), 73 Ind. App. 309, 316, 127 N. E. 298.

"The duty to use ordinary care to avoid injury which is imposed on one about to make use of a street over which railroad trains cross does not ordinarily require him to stop, but it does require him to look and listen, and to exercise ordinary care to select a place where the act of looking and listening will be reasonably effective. That point, however, in its precise relation to the track in feet, is seldom to be determined as a matter of law, the underlying test being: Was ordinary care used by the traveler in selecting the place in view of the conditions before him and the danger reasonably to be anticipated." *Pittsburgh, etc., R. Co.* v. *Dove* (1916), 184 Ind. 447, 453, 111 N. E. 609, 611.

From the evidence of appellee and the facts in this case, which are not in dispute, it is established that this railroad crossing at which he was injured was in a rural community; that the railroad crossed the highway at an angle of 48.5 degrees, running from the southeast to the northwest; that appellee lived a short distance south of the railroad crossing and had lived there for several months; that the road over this highway crossing was a direct route to the county seat, Rochester, Indiana; that he had traveled over this crossing several times before; that it was a bright, clear day in August, and the accident occurred shortly after 1:00 P. M.; that appellee was traveling north on this highway with his team and wagon going to a neighbor's, north of the railroad track, to help with the threshing; that for a distance of about thirty-five rods south from the right of way,

there were obstructions toward the east, the direction from which this train that struck appellee came, that made it practically impossible for a traveler approaching the crossing from the south to see a train approaching from the east until the traveler arrived at the south right of way line. After arriving at the south right of way line, sixty-seven feet from the south rail of the track, appellee's view to the east increased as he approached the track. His testimony is that the first time he looked to the east for a train after passing the McCroskey house, nearly thirty-five rods south of the crossing, was just as he came to the right of way line of the railroad. He said that there are obstructioins at this point and he could not see very well, but could see about 150 feet when at the right of way line. Appellee, then, says that he looked to the north, to see if any cars were coming, then to the west and that he did not look again to the east until the front feet of his horses were across the north rail. There is some conflict in his own statements, for immediately following this statement, he says, "four or five seconds elapsed." Then, on cross-examination, he says that from the time he looked at the right of way line until he saw the train would be a "little more than fifteen seconds." Appellee was familiar with this crossing; it was in the daytime and clear; he knew that there were obstructions existing on the east side of the highway so that at the time he was thirty-five rods south of the crossing, he could not see down the track, and that he could not see down the track to the east until he arrived at the right of way line. The train which struck appellee was a freight, and was traveling toward this crossing at a speed of from 40 to 45 miles an hour, from the east.

Appellee's own testimony is that he looked when he arrived at the right of way line, and did not look again until the front feet of his horses were across the north rail (this being a single track railroad).

Appellee traveled, while he was standing on the wagon, a distance of more than fifty feet from the right of way line until he looked again to the east. We believe it manifest that the facts relating to the contributory negligence of appellee are so convincing that we cannot reach a different conclusion than that the appellee was guilty of contributory negligence in approaching this railroad crossing in the manner he did, as shown by all the evidence most favorable to him; and that he did not use reasonable care in looking and listening for trains from the east, and did not use reasonable care such as an ordinarily prudent person would use in selecting a place to look and listen where it would avail. He first looked when he was at the right of way line and says he could see only 150 feet. He was a man 64 years of age, about 5' 8" tall, and was standing on top of a hayrack on a wagon which was from 3½ to 4 feet from the ground. It was a bright, clear day, his hearing was good and he was going toward the crossing at from three to four miles per hour. He knew that the railroad track was there and he also knew that his view was obstructed from thirty-five rods south of the crossing until he came to the right of way line. He also knew that a train might be coming from the east at a high rate of speed. The very fact that the view to the east was obstructed as he has said ought to indicate to him the extra hazard in attempting to cross and that he ought to use care commensurate with the surroundings and circumstances, and surely ordinary care required that he look and listen at a place where he could hear and see for more than 150 feet to the east on the railroad track. According to his own testimony, he could stop his team "instantly" and he did not look again to the east, where the obstructions were and the most danger would likely lie, until the front feet of his horses were across the north rail of the track. He moved from the right of way line to the place where he looked, a distance

of more than fifty feet at a rate of from three to four miles per hour before he looked to the east again and then, he says, "the train was upon" him. Surely reasonable care would require that the appellee on approaching this crossing should look and listen at a place which would be effective; that is, at a point other than where his view was obstructed. It is true, as was said in the case of *Waking* v. *Cincinnati, etc., R. Co., supra,* that the exercise of reasonable care at a highway crossing does not require the traveler to look at a precise distance from the crossing but it does require that he select a place where such acts will be reasonably effective.

We think that but one conclusion can be drawn from the facts in this case most favorable to appellee and that is, that the appellee was guilty of contributory negligence. When this state of facts exists, the question of contributory negligence becomes one of law. For the reasons stated above, we believe that the evidence is not sufficient to sustain the verdict and hence is contrary to law.

There are several other questions raised which it is not necessary to decide or discuss as they will likely not arise upon a re-trial of this cause.

Judgment reversed and the lower court is directed to sustain appellant's motion for a new trial.

Curtis, J., dissenting.