**MOSS v. PENNSYLVANIA R. CO.**

No. 8549.

Circuit Court of Appeals, Seventh Circuit.
Jan. 3, 1945.

Rehearing Denied Jan. 26, 1945.

Before EVANS, KERNER, and MINTON, Circuit Judges.

F. E. Zollars and Phil M. McNagny, both of Fort Wayne, Ind. (Barrett, Barrett & McNagny, of Fort Wayne, Ind., of counsel), for appellant.

Owen W. Crumpacker, Frederick C. Crumpacker, Jr., and Edwin H. Friedrich, all of Hammond, Ind. for appellee.

EVANS, Circuit Judge.

■■■ We approach the case on the hypothesis that where the sufficiency of the evidence to support the verdict is the only controverted issue, only evidence most favorable to plaintiff will be considered. Likewise narrowing the fact study is our acceptance of plaintiff's evidence as sufficient to establish her charge of negligence on defendant's part.[1]

Thus narrowed, our only inquiry is one of contributory negligence.

The accident occurred about 3 P.M., December 6, 1941, on a somewhat dark, but stormless day. The deceased drove his automobile along the Austin highway from the south, onto defendant's right of way, and in front of an oncoming train. In doing so he was struck and fatally injured. He never regained consciousness although he lived several days.

Ordinarily, this simple undisputed factual statement would settle the question of liability.[2] *Unexplained,* the facts establish contributory negligence as a matter of law. Plaintiff, however, offers an *explanation* of deceased's conduct. At least an attempt to do so is made. It is based on the theory of an obstructed view of the oncoming train. The nature of the alleged obstruction and its effect as an excuse for the deceased's action, therefore, become the precise question of our inquiry.

That an obstruction of the view of a rapidly moving train may explain or excuse the traveler from what would otherwise be negligence, is not debatable. Pokora v. Wabash Ry. Co., 292 U.S. 98, 54 S.Ct. 580, 78 L.Ed. 1149, 91 A.L.R. 1049.

■■■ The query then is, What are the facts in the instant case? In an effort to answer this query, we have assumed:

(a) In applying the law, each case must be determined by its own facts.

(b) The law, as announced by the Indiana state courts, governs.

(c) The controversy here, as in most personal injury cases, is not over the applicable law, for the decisions are quite uniform, but involves a study of the facts peculiar to this case and the application of settled Indiana law thereto.

Controversy, if any, must spring from an attempt to ascertain the undisputed facts and supplement them by the controverted facts construed by us most favorably to the plaintiff.

---

[1] Four witnesses testified that the whistle on the engine was blown. Two witnesses testified that they did not hear any whistle.

[2] Baltimore & O. R. R. v. Goodman, 275 U.S. 66, 48 S.Ct. 24, 72 L.Ed. 167, 56 A. L.R. 645; Pokora v. Wabash Ry. Co., 292 U.S. 98, 54 S.Ct. 580, 78 L.Ed. 1149, 91 A.L.R. 1049; Hellard v. B. & O. R. R. Co., 7 Cir., 131 F.2d 145. See also, Flannelly v. Delaware & Hudson Co., 225 U.S. 597, 32 S.Ct. 783, 56 L.Ed. 1221, 44 L.R. A.,N.S., 154; Grand Trunk R. Co. v. Ives, 144 U.S. 408, 12 S.Ct. 679, 36 L.Ed. 485; Hartl v. Chicago, Mil. & St. Paul R. Co., 7 Cir., 73 F.2d 875.

Herewith reproduced are two photographs. One shows the situation at the crossing where the accident occurred. The other is

Def. Ex. 1

Def. Ex. 5

a view of the railroad right of way and the tracks as the traveler approached the crossing. It purports to show the distance (a mile) the traveler, approaching from the south, could see down the railroad right of way, and also to show the absence of any obstruction, when the photographer stood forty-four feet from the nearest rail over which the train moved.

The only possible dispute is over the number of feet the photographer stood south of the track.

The evidence is that as the deceased continued his way along the Austin highway and approached the railroad right of way, he reached a point where there was some obstruction to his view. To his right, a rise of land, referred to as a mound or knoll, partially obstructed the view. It was several feet high (maximum of 9 feet) and upon it grass had grown. It extended parallel to the right of way about two hundred feet and was about a hundred feet wide. Measurements vary, because of difference over place where land begins to rise.

The knoll did not completely obstruct the view of an oncoming train from the south, however, and one riding in an automobile on the road could see the top of the train over the top of the knoll. The extent of the obstruction when the traveler is behind the mound is not the determining factor in the defense of contributory negligence, however. As the traveler approached the track, he reached a point where the obstruction, or partial obstruction, to-wit, the mound or knoll, no longer interfered with a traveler's view of the track or an oncoming train. As the mound subsided and the land became level again, nothing obstructed the view.

The exact distance which marks this spot where clear vision began, thus becomes the important and determinative question in the case.

Counsel do not agree upon the distance such spot was from the railroad tracks. Both do agree, and must agree, that there was such a spot, which the deceased reached before he came to the tracks,—a spot where he could clearly see the oncoming train. Not only the testimony but the photographs, establish this fact as a verity. There is no controversy, either, as to the general correctness of the photographs,

once the traveler reached the point where he could look down the track.

Actual measurements were taken by witnesses for the defendant and their testimony is undisputed, save by one witness upon whom plaintiff relies to make the question one for the jury. He gave it as his estimate, based upon an observation after the accident, that it was from twenty to thirty feet from the south rail of the track traveled by the train. The measurements given by the other witnesses were as follows: At forty-four feet from the track, the traveler could see the overhead bridge a mile away. The photograph, so they said, was taken with the photographer forty-four feet from said rail.

Placing the camera in the center of the road, fifty-five feet from the south rail, a man standing in the center of the track in question, could be seen six hundred seventy feet from the crossing. The same test was made at fifty feet from the same rail and the man could be seen nine hundred thirty-five feet down the track. At forty-four feet one could see as far as his sight would permit. The overhead bridge, a mile away, was observable.

The factual issue which is determinative of the case, then, is the distance from the track to a spot where deceased's view was still unobstructed. That there was such a spot is certain.

The various witnesses who made the *measurements* fixed that point at a distance from the said rail, considerably more than the estimate of the one witness for the plaintiff, who *approximated* it at twenty to thirty feet.

The testimony of plaintiff's witness is important and we quote it:

"Question * * * When you came up to 55 and 45 feet from the north track there, * * * I will ask you whether or not it is not a fact that you can pass the corner of the knoll and you have a view way down the track to the east.

"Answer: Yes, at some point there you can see the train coming at some distance.

"Question: What point, and what distance?

"Answer: At a point I would say about 30 feet, 20 to 30 feet probably before you approach the track, I made no exact measurements as to distance. I am not sure as to the number of feet that it takes

for you to see down this track. I never made any measurements."

The testimony of this witness and those who made the actual measurements may not be said to be in conflict. The testimony of· one who estimates and allows for a range of ten feet is reconcilable with an actual measurement of 44 feet. So accepting it, we have the deceased traveling in a car at a rate of ten to fifteen miles an hour, approaching a railroad track, the existence of which he knew, without stopping. The approaching train composed of two engines and thirteen passenger cars and travelling seventy miles per hour, was a few hundred feet away. Yet he drove on the track in front of the oncoming train.

■ Either he was in hopes that he would get across the track before the engine reached the spot, or he did not look to the right as he approached the track. That he could have stopped before he reached the track, in twenty feet, is, we believe, a matter of common knowledge.

The Indiana statute has imposed an additional duty upon the traveler. It does not make the action of the ordinary man the test of the traveler's duty. It mandatorily called on the traveler to stop when approaching a crossing. The evidence of all witnesses who saw deceased approach the track was that the deceased did not stop.

The statute, omitting inapplicable provisions, reads:

"47-2114. *Obedience to signal indicating approach of train.*—Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty (50) feet but not less than ten (10) feet from the nearest track of such railroad and shall not proceed until he can do so safely, when:

"(a)  *  *  *

"(b)  *  *  *

"(c)  *  *  *

"(d) An approaching train is plainly visible and is in hazardous proximity to such crossing."

■ The deceased failed to comply with this statute. His failure to stop is a violation of the statute somewhat similar to defendant's action in driving its train faster than fifteen miles through this town. Defendant's violation of the town's speed ordinance established negligence on the part of the defendant. Plaintiff's failure to comply with the statute carried like consequences. At least we find it hard to escape this reasoning. We are not the judge of the wisdom of this rather harsh statute. Its wisdom is for the Indiana legislature. Moreover, its scope and effect are for the Indiana courts. As we read, construe, and apply it, a serious obstacle has been erected by it in plaintiff's path to recovery.

We are, however, not placing our decision upon this statute. There seems to be uncertainty in Indiana courts as to this statute's proper construction and application. We ignore it because as we view the evidence we must reach the same conclusion without relying on it.

■ Ignoring this statute, it still seems to us clear that deceased should have stopped, rather than have driven on the track in front of the engine.

In reaching this conclusion we are taking the most favorable and charitable view of deceased's action, namely, that he did not endeavor to race with the engine, but rather that he failed to look and therefore failed to see the oncoming train. We are accepting the *estimate* of plaintiff's witness rather than the *measurements* of defendant's witnesses, solely on the theory that it is the testimony most favorable to plaintiff that can be found in the record.

He should have looked. He must be charged with the information which he would have received had he looked.

There is one fact thus far not mentioned, which plaintiff has properly stressed and which we have not overlooked. The railroad tracks and the highway did not cross at right angles. The highway ran north and south. The railroad right of way ran southeast and northwest. The train which struck Moss was coming from the southeast at an angle of about forty-five degrees. To have seen it coming the deceased would have had to turn his head further than if it crossed ·at right angles. The train was obviously, clearly and warningly observable. The duty of the traveler was to look, not merely at right angles, but down the path of the right of way. He can not be excused for not looking as he approached the railroad double track with intent to pass over it. Had he looked he could not have failed to see the train. As it traveled the last six

hundred feet before reaching the crossing, it was almost as clearly observable as if the tracks ran at right angle to the highway. The photograph supports common observation in making this statement.

The conclusion which we have reached seems to us to be unavoidable. Deceased drove his automobile out in front of an oncoming train which he must have seen had he looked. He met the inevitable fate which such action forecast. The accident is distressing, most unfortunate, but liability must be measured by the facts.

The judgment is reversed.

KERNER, Circuit Judge (dissenting).

The accident occurred at the Austin Avenue crossing, a principal north and south street in the town of Schererville, Indiana, in which town there was in effect an ordinance limiting the speed of railroad trains to 15 miles per hour. This street intersects defendant's railroad, consisting of two tracks extending in a northwesterly and southeasterly direction. The tracks intersect Austin Avenue at an acute angle. The tracks are at road level, but there was a knoll 9 feet above track level upon which there were weeds extending from 1½ feet to 5 feet in height. The knoll was 200 feet long paralleling the track and was 32 feet from the south rail of the westbound or north track. Due to this knoll the vision of a driver coming from the south on Austin Avenue is somewhat obscured. The first view to the right or southeast, obtainable by a person driving north, is from a point 20 feet south of the westbound or northernmost track. (See testimony of Schinourd, page 29, transcript of record.)

It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. That conclusion, whether it relates to negligence, causation or any other factual matter, cannot be ignored. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel other results are more reasonable. Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 35, 64 S.Ct. 409.

Photographs are not conclusive to such an extent that evidence in conflict with them will be ignored. They are no more conclusive of physical facts than the testimony of witnesses. It is for the jury to determine their weight and reliability by the same test used in weighing other evidence. Pettibone v. Howard, 218 Ind. 543, 546, 34 N.E.2d 12. Whether decedent had a view of the approaching train at any time prior to the collision was a disputed question of fact, and where there is conflict between photographs and oral testimony it is within the province of the jury to consider both the photographs and the conflicting oral testimony as well as all other conditions and circumstances shown by the evidence, and its determination is conclusive. Bartley v. Chicago & Eastern Illinois Ry. Co., 216 Ind. 512, 24 N.E.2d 405.

Defendant admits that decedent's view to the southeast was partially obstructed by the knoll and that in operating the train at a speed of 65 to 70 miles per hour, in violation of the terms of the town ordinance, it was guilty of negligence. The verdict necessarily found not only that decedent exercised all the care which an ordinarily prudent and cautious person would use under like circumstances and conditions to avoid injury, but it also found that no signal or warning of any kind was given of the approaching train. We must accept as a verity that the first possible view or knowledge the decedent could have had of the approach of the train was when he had arrived at a point 20 feet south of the track upon which the train was approaching.

The courts of Indiana have held that in negligence cases there is no presumption that either party was or was not negligent, and neither courts nor juries have any right to presume any fact in issue which they are called upon to determine, Pennsylvania R. Co. v. Lytle, 109 Ind.App. 318, 327, 34 N.E.2d 939; Baltimore & Ohio R. Co. v. Reyher, 216 Ind. 545, 549, 24 N.E.2d 284; and Heiny v. Pennsylvania R. Co., 221 Ind. 367, 373, 47 N.E.2d 145. They have repeatedly said that contributory negligence is a question of fact for the jury, and that it is only in cases where the facts are undisputed and where only a single inference can be reasonably drawn from the facts that the court can say, as a matter of law, that a certain course of conduct does, or does not, constitute contributory negligence, Cushman Motor Delivery Co. v. McCabe, 219 Ind. 156, 36 N.E.2d 769;

Baltimore & Ohio R. Co. v. Reyher, supra; and Bartley v. Chicago & E. I. Ry. Co., supra. They have declared as a matter of law that ordinary care requires a person about to cross a railroad track to use his senses of sight and hearing, but they have never said that he must stop or that he must look or listen at any particular place, Central Indiana Ry. Co. v. Wishard, 186 Ind. 262, 114 N.E. 970, and Bartley v. Chicago & E. I. Ry. Co., supra. He is required to exercise ordinary care to select a place where the act of looking and listening will be reasonably effective, but the point, in its precise relation to the track in feet, is seldom to be determined as a matter of law. Pittsburgh, etc., Ry. Co. v. Dove, 184 Ind. 447, 111 N.E. 609.

It is intimated that decedent was guilty of contributory negligence as a matter of law, in that he failed to stop his automobile within 50 but not less than 10 feet of the crossing, as required by statute. Burns' Ann.St.1933, § 47-2114.

The Supreme Court of Indiana had occasion to discuss and interpret a somewhat similar statute, in which a like contention was made. In that case the court held the case was basically a common-law action; that the decedent's conduct was to be measured by the standard of ordinary care; and that in Indiana no degrees of actionable negligence are recognized other than that which results from the failure or refusal to exercise ordinary care. Heiny v. Pennsylvania Railroad Co., 221 Ind. 367, 47 N.E.2d 145.

The burden of proof as to contributory negligence is on the defendant, § 2-1025, Burns' Ann.St.1933. My colleagues are of the opinion that they can say as a matter of law that decedent was guilty of contributory negligence. It seems to me that in reaching this conclusion, they overlook and fail to apply the principles enunciated in the cases cited in this opinion.

There was no evidence that decedent was familiar with the crossing. In fact there was evidence tending to prove that he was unfamiliar with the crossing. His conduct was to be measured by the standard of ordinary care, which required him to look and listen. There was no evidence that he was not looking when he was 20 feet from the north track. True it is, he could have seen the approaching train had he looked to the southeast immediately after he had reached a point 20 feet from the north track. But the courts of Indiana have said that the look and listen rule could not be inflexibly applied in all cases, Stoy v. Louisville, etc., R. Co., 160 Ind. 144, 66 N.E. 615, and that the rule did not require that decedent look or listen at a particular place, in a particular direction, at almost a particular instant of time, irrespective of other conditions. Cleveland, etc., R. Co. v. Lynn, 177 Ind. 311, 318, 95 N.E. 577, 98 N.E. 67. Consequently, decedent could not be charged with contributory negligence as a matter of law, because he did not look to the southeast immediately before he was struck by the train. Pennsylvania R. R. Co. v. Hemmer, 206 Ind. 311, 186 N.E. 285, 189 N.E. 137. Under such circumstances, the question whether decedent was guilty of contributory negligence was for the jury.

Moreover, in this case, decedent was entitled to assume defendant would sound a whistle announcing the approach of the train and that the train would not be operated in violation of the town ordinance, Chicago, etc., R. Co. v. Daun, 53 Ind.App. 382, 101 N.E. 731. No warning was given by blowing a whistle and the train was traveling 65 miles per hour or 95⅓ feet per second, while the decedent was traveling 10 miles per hour or 14⅔ feet per second. The failure to sound a whistle and the operation of the train in violation of the town ordinance, together with all the other evidence in the case, were factors to be considered in determining the question of contributory negligence. Malott v. Hawkins, 159 Ind. 127, 135, 63 N.E. 308.

I would affirm the judgment.