PETTIBONE *v.* HOWARD

[No. 27,529.   Filed May 20, 1941.]

544

*Cope J. Hanley*, of Chicago, Illinois (*William L. Taylor* · and *Thompson Kurrie*, both of Indianapolis, and *George B. Staff*, of Franklin, of counsel), for appellant.

*William Edward Reiley*, *Edward Payson Hart* and *Slack & Laymon*, all of Indianapolis, and *White & Haymaker*, of Franklin, for appellee.

RICHMAN, J.—Appellee recovered judgment on a verdict in an action for negligence on account of injuries received when an automobile which he was driving on U. S. Highway No. 36 collided with appellant's passenger train, December 4, 1936, in the Town of Bainbridge, Indiana. Four errors are relied upon all presented by the motion for new trial; first, insufficiency of the evidence to sustain the verdict on the ground that it shows appellee to have been guilty of contributory negligence as a matter of law; second, submission to the jury of the issue of negligence in failing to maintain a watchman at the crossing when there was no legal obligation so to do; third, instructing the jury that "a railroad train approaching a public highway must give three sharp blasts of its whistle" when the statute, § 55-1243, Burns' 1933, § 14557, Baldwin's 1934, requires only that the whistle be sounded "distinctly three (3) times"; fourth, in permitting a witness whose only qualifying experience had been in salvaging automobiles to testify as an expert that from the fact that "the hood was not bent back" he was of the opinion that the automobile did not hit but was hit by the train.

Before we set out the pertinent evidence on the question of contributory negligence it is necessary to dispose of appellant's contention as to the conclusive character of its photographs, particularly Exhibit 6. Appellant says:

"The obvious conclusion to be drawn from this picture is that the physical surroundings of the crossing presented a situation where there were no obstructions to appellee's view which would prevent him from ascertaining the approach of this train had he looked. Any oral evidence as to there being an obstruction cannot be considered because the accuracy of the photograph and the faithfulness of the reproduction was not questioned in any manner."

If by "not questioned" appellant means that the photograph was admitted without objection, or that there was no cross-examination of the photographer, then the effect of appellant's statement is that any photograph so admitted is determinative of the facts represented. This is not the law.

"It is to be remembered that photographs are not conclusive to such an extent that evidence in conflict with them will be ignored. They are no more conclusive of physical facts than the testimony of witnesses. It is for the jury to determine their weight and reliability by the same test used in weighing other evidence."

*Haven* v. *Snyder* (1931), 93 Ind. App. 54, 63, 176 N. E. 149.

So where there is conflict between photographs and oral testimony we are required in this inquiry to accept that which is most favorable to appellee.

The main line of appellant's railroad ran approximately north and south through the west end of Bain-

bridge. It was crossed at nearly a right angle by U. S. Highway No. 36, a two lane highway paved with concrete. A switch track paralleled the main track immediately east thereof. From a curve 700 feet from the railroad the highway was straight and level toward the railroad. At a point 620 feet west of the railroad on the south side of the highway was a steel sign upon which were the words "Speed Limit 30 Miles." On the same side of the highway 468 feet west of the railroad was a sign reading "Bainbridge City Limits." The letters "RR" were painted on the concrete between two sets of three horizontal lines a foot apart, the west portion of the letters being 363 feet and the east crossline 328 feet from the railroad. On the south side of the highway 348 feet from the railroad was a yellow disc sign 30 inches in diameter with the letters "RR" thereon. Along the center of the concrete was a painted black and white stripe extending from a point 394 feet west of the track to a point 24 feet therefrom. Three horizontal lines were painted across the highway 118 feet from the track and a second set of three lines 105 feet from the crossing. Near the southwest corner of the intersection was an automatic flash signal on a post, above which were diagonal cross-arms with the word "Railroad" on one and "Crossing" on the other, topped by a horizontal bar on which was the word "Danger."

With the camera set 250 feet west of the railroad and in the center of the highway 5 feet 5 inches above the surface thereof, looking to the right or south of the highway, Exhibit 6 shows an unobstructed view of the railroad for about 400 feet south of the intersection, except for four trees without leaves thereon. Looking from points farther west on the highway the view was obstructed at various places by buildings.

The only conflict with the photographic evidence is appellee's father's testimony, which we are required to take as true, that, within the 250 feet distance, at several places, an embankment "in the neighborhood of five or six feet" high south of the highway would obscure the view of a train when riding in an automobile traveling from the west to east. He said this was true for a distance of "a third of the way; something of that sort; half or something like that."

The most favorable version of the conduct of appellee immediately prior to the collision is derived from his own testimony. He was 24 years old and operated a filling station in Indianapolis. Unaccompanied he left Carbon shortly before noon, driving a two-year old Ford coupe. At Belmore he turned east on Highway 36 toward Indianapolis. As he approached Bainbridge he was driving 35 to 40 miles per hour. West of Bainbridge the new highway at a slight angle leaves the old which also crosses the railroad tracks about 260 feet south of Highway 36 and 640 feet north of the depot. A short distance from the point of divergence of the two roads he rolled down his window to throw away a cigarette and then looked toward the station and saw no train. He was then driving at the rate of 25 miles per hour. As he approached the railroad, at a point where there was a windmill, (approximately 500 feet from the railroad) he looked to the right, could see the depot and that no train was then approaching. Between that point and the railroad he looked to the left and right three or four times, mostly to the left. When he was a few feet from the track he first saw the engine of the northbound train. It was 15 or 20 feet south of him. He turned slightly to the left and the front part of his automobile was hit by the cowcatcher. He was acquainted with the crossing. The flasher lights were

not working. Just before he approached the railroad he was driving at a speed of 20 to 25 miles per hour.

This evidence must be considered in connection with the facts, which also we must take as true because supported by some evidence, that the train was running at the rate of 80 miles per hour (117 feet per second) and neither the whistle nor the bell was sounded.

That leaves as the only warning which appellee might have heard, had he listened, the noise of the moving train which at that speed could not have approached in silence. There was no evidence that he did hear it. The direction of the wind as well as other noises including that of appellee's automobile, might have prevented his hearing the train, at least until it was too late to avoid collision. We cannot say as a matter of law that he was negligent in this respect.

Whether in the exercise of ordinary care he might have seen the train in time to have prevented the collision, we think was also for the jury. The principles of law are well known and do not require restatement. Their application is always the troublesome problem in this type of case. While cases may be found with some similar facts seldom, if ever, are all the facts the same, so that it is safe to assert that each case "must stand on its own bottom."

The opinion in *Baltimore & O. R. Co.* v. *Reyher* (1939), 216 Ind. 545, 554, 24 N. E. (2d) 284, discloses that the traveler approaching the crossing had equal if not greater opportunity than appellee herein to see and avoid being struck by the train, but it was held that the question of contributory negligence was for the jury. We therein said that "the exercise of due care did not impose upon decedent the duty to look for approaching trains when he was at any precise place or distance from the tracks, so long as he did look when

and where such observations were reasonably calculated to be effective; nor was he required to look to one side first in preference to the other." After observing from a place 500 feet from the track that no train was approaching, it is not shown that appellee could see again until 250 feet therefrom; and at intervals then for as much as half the distance to the track the embankment obscured his vision. Whether he looked at the proper place we cannot say as a matter of law. He did look at some places.

*Pennsylvania R. R. Co.* v. *Boyd* (1934), 98 Ind. App. 439, 445, 446, 185 N. E. 160, was a case similar to this. Instead of a "flasher," an electric bell was maintained at the crossing. There was evidence that it was not working. The opinion states that "appellee had the right to presume that the signal bell at the crossing would be ringing" (if a train were near); "and, in determining whether or not appellee was guilty of contributory negligence, the jury had the right to take into consideration such presumption." While we like the word "inference" better than "presumption" the principle is correctly stated and is applicable to the facts before us, which also in other respects resemble those in the Boyd case, where the jury's verdict was permitted to stand against the charge of insufficiency of evidence.

We realize that there was credible demonstrative and oral evidence quite at variance upon all issues with that we have detailed. But we cannot weigh the evidence. That is the duty of the trial court. Not infrequently to an appellate court it seems that such duty has not been performed. But as stated by Judge Roby, who is quoted in *Baltimore & O. R. Co.* v. *Reyher, supra,* " 'in this task much is left to discretion and judgment . . . A court of appeals does

not properly assume that attitude which alone becomes the trial judge and jury.'"

The second question is raised in a somewhat involved manner. Instruction No. 14 given by the court on its own motion was a statement of the issues. It recited the allegations of negligence as stated in the complaint as follows:

"That it operated said passenger train at a high and dangerous rate of speed, to-wit: seventy (70) miles an hour as it approached said highway; that it negligently failed to sound the whistle on the engine of said train distinctly three times when not less than eighty (80) rods and not more than one hundred (100) rods from where said railroad crossed said highway; that it negligently failed to sound its bell continuously from a point not less than eighty (80) rods from said highway and not more than one hundred rods of said highway until it had crossed said highway.

"That the defendant was negligent in this: That it maintained two sets of tracks running across said highway; that one of said tracks was for switching purposes and one for the main traffic of said railroad; that the approach to said tracks from the west going east is obstructed from view both to the north and the south; that said view to the north is obstructed by reason of numerous houses or structures and the slope of the terrain on the west of said tracks; that highway No. 36 is one of the main arteries of the state highway system and is traveled extensively; that the defendant negligently failed to place a flagman at the intersection of said highway by said railroad tracks."

The first part of instruction No. 10 given by the court of its own motion reads:

"As to plaintiff's complaint, the burden is upon the plaintiff to establish by a fair preponderance of all the evidence the material allegations of his complaint as to his injury and extent thereof, and also that some one of the acts of negligence of the defendant, as alleged in the complaint, was a proximate cause of said injury."

Appellant says that these two instructions submitted to the jury the issue of negligence in failing to place a flagman at the crossing when there was no legal duty so to do and no evidence on the subject. The argument is made that the language of the complaint first above quoted is to be coupled with the later averment in the complaint "that by reason of the negligence and as a proximate result of said negligence of defendant as aforesaid, the plaintiff was injured, etc." and when so coupled, amounts to one charge of negligence made up of four concurring acts, namely, speed of 70 miles per hour, failure to sound whistle, failure to ring the bell, and failure to have a flagman. Appellant asserts that the court treated these averments as separate charges of negligence and by these instructions "impliedly authorized a verdict for appellee if one of the allegations of negligence was proven."

Instruction No. 10, only part of which we have quoted, deals almost wholly with the subject of proximate cause and is evidently what lawyers commonly call a "stock" instruction on that subject, modified of course to fit the issues in the particular case. It does not direct the attention of the jury to any specific charge of negligence but in a general way only states that it is not sufficient that the party having the burden merely prove negligence but he must go further and show that such negligence was the proximate cause of the injury.

Instruction 14 by itself was permissible. In *Angell* v. *Arnett* (1924), 81 Ind. App. 614, 616, 142 N. E. 720, it is said:

"It has been held to be proper to state the allegations of a complaint in an instruction. (Citation.) The right of a court to do so, does not depend upon whether or not it states a cause of action. If a defendant is confronted with an insufficient com-

plaint, he may elect, if he so chooses, not to demur thereto, but to file an answer and go to trial, and rely on the plaintiff failing to establish a cause of action against him, if the evidence goes no further than the allegations of such complaint. In that event, he has no right to complain, if the court merely states the allegations thereof in an instruction."

The record here shows that no attack was made upon the complaint either by motion or demurrer. After the complaint was filed the issue was promptly closed by answer in denial. If appellant had unsuccessfully moved to strike from the complaint the allegation of negligence in failing to maintain a watchman or if the court had refused to give an instruction tendered by appellant taking that issue from the jury, he would be in a better position to complain. See *Chicago, etc., R. Co.* v. *Ellis, Admx.* (1925), 83 Ind. App. 701, 149 N. E. 909, in which both steps were taken, the latter successfully, making harmless the court's error (if any) in overruling the motion to strike.

The obligation may not be shifted to appellee to "maintain a proper record," as claimed by appellant. His was the duty to bring the matter to the attention of the trial court which he did not do. Forty-four instructions were given, of which 21 were tendered by appellant, who specifically by his instructions directed the jury's attention, in as favorable a manner as apparently was deemed possible, to every charge of negligence other than the failure to maintain a watchman. That subject was not mentioned directly or indirectly except as it appears above in the two instructions quoted.

We are not impressed with the argument that there was only one charge of negligence made up of four concurring acts. On page 80 of his brief appellant

himself separates these by referring to "the fourth allegation of negligence." The case of *Terre Haute & I. R. Co.* v. *McCarkle* (1895), 140 Ind. 613, 40 N. E. 62, is not in point. There failure to remedy two defects in equipment was relied upon as constituting negligence. The accident could not have occurred without the concurring operation of the two defective appliances. It was held that both defects must be proved. A similar principle ruled in *Southern Ind. Gas, etc., Co.* v. *Winstead* (1931), 92 Ind. App. 329, 333, 175 N. E. 281, where many similar cases are cited.

In *Lake Erie, etc., R. Co.* v. *Johnson* (1922), 191 Ind. 479, 482, 133 N. E. 732, an instruction was given stating three charges of negligence, the third being failure to maintain a watchman, as set forth in the complaint, which statement was followed by this language:

> " 'In order to recover it is not necessary that the plaintiff prove all of the acts of negligence above set forth, but he must prove . . . at least one of such acts of negligence, and it must appear that such act of negligence was the proximate cause of the accident resulting in plaintiff's injury.' "

In addition to this instruction another "directly submitted to the jury for its decision the question whether or not the appellant was guilty of negligence in failing to maintain a watchman." It was held that both instructions were erroneous, and for these and other errors the judgment was reversed.

We do not deem this case here controlling. The instructions under review only indirectly presented the issue. There was ample evidence of the other three charges of negligence. In fact appellant does not assign as error the insufficiency of the evidence to sustain any of those charges. We do not believe the jury could have been misled by the instruc-

tions into basing the verdict upon a charge on which there was no evidence and which except for the recital in No. 14 seems not to have been mentioned in the trial.

The third assignment of error seems insubstantial. While it would have been more accurate for the court to have told the jury that the whistle should be sounded "distinctly three times," the words "three sharp blasts" in instruction No. 2 given at the request of appellee was not, in our opinion, likely to mislead the jury by giving the impression that the signals to which the train crew testified were not statutory signals. Appellee refers us to the examination of the fireman by one of appellant's attorneys. Both spoke of the sounding of the whistle as a "blast." Perhaps a locomotive whistle may be sounded softly or loudly at the will of the operator. That fact does not appear in evidence but is suggested in the briefs. We think, however, that if it is sounded in the usual manner it may fairly be called a blast. The word "sharp" conveys the same meaning as "distinct." The jury was concerned with whether the whistle was blown, not how loudly nor how distinctly. The testimony of some witnesses indicated that the statutory signals were given, of other witnesses that the whistle was not sounded. There seems to have been no issue below as to the "quantum of sound." In such a situation we do not see how the instruction could have been harmful, even if erroneous.

As to the fourth error relied upon, appellee cites four cases approving opinion evidence similar to that of which appellant complains, *Yorkshire Insurance Co.* v. *Bunch-Marrow Motor Co.* (1925), 212 Ala. 588, 103 So. 670; *McCarthy* v. *Souther* (1927), 83 N. H. 29, 137 A. 445; *Crampton* v. *Daime* (1928), 224 Ky. 507, 6 S. W. (2d) 686; *Finch* v. *Weiner* (1929),

109 Conn. 616, 145 A. 31, to which we add *Jackson* v. *Anthony* (1933), 282 Mass. 540, 185 N. E. 389, wherein the general rule is well stated. We are unable to say that the condition of the wrecked car was or was not such that the jurors could draw their own conclusion therefrom as to whether the car hit the tender of the locomotive, as claimed by appellant, or was hit by the cowcatcher, as claimed by appellee. If they could, then the conclusion of the witness added or detracted nothing. If they could not, then his opinion was admissible, assuming his qualification as an expert, which is a question for the trial judge, in the exercise of reasonable discretion. In any event the opinion given was immaterial. If the train was traveling at the rate of 80 miles per hour, of which there was some evidence, less than half a second elapsed between the times the cowcatcher and the tender passed the point of collision. What happened in this split second has no practical significance on the question of contributory negligence. If this evidence was erroneously admitted it was harmless.

Finding no reversible error, the judgment is affirmed.

Swaim, J., not participating.

NOTE.—Reported in 34 N. E. (2d) 12.