CONSOLIDATED RAIL CORPORA-
TION, Appellant (Defendant
Below),

v.

Henry L. THOMAS, Appellee
(Plaintiff Below).

No. 4–283A52.

Court of Appeals of Indiana,
Fourth District.

May 16, 1984.

Cheryl B. Stephan, La Porte, for appellant.

Steven W. Handlon, Rice, Rice & Handlon, Portage, for appellee.

YOUNG, Judge.

Henry L. Thomas brought suit against Consolidated Rail Corporation (Conrail) for injuries he suffered in a collision between his automobile and a Conrail train. The jury returned a verdict for Thomas, awarding him damages in the amount of $150,-000, and the court entered judgment against Conrail accordingly. Conrail appeals from this judgment.

We affirm.

The collision giving rise to this litigation occurred on April 9, 1978, at a railroad crossing on Fifth Avenue in Gary, Indiana. Fifth Avenue is a five lane road running east and west. The railroad tracks at the crossing run northwest and southeast, intersecting Fifth Avenue at roughly a forty-five degree angle. The crossing itself consists of four sets of tracks. The two easterly sets of tracks are owned and maintained by the Norfolk & Western Railroad (N & W), and the two westerly sets of track are owned by Conrail. Thus, one driving west on Fifth Avenue would cross the N & W tracks first and then the Conrail tracks. Between N & W's tracks and Conrail's is a space of 119 feet, measured along the road. N & W maintains warning signals on the east side of the crossing, including a crossing gate to stop traffic approaching from the east. Conrail has similar warning signals on the west side of the crossing. The crossing gates have signs that read "4 Tracks". Fifth Avenue is straight and level at the crossing.

Thomas approached this crossing from the east at 12:45 a.m. on April 9, 1978. He observed that the N & W signals were not flashing and that the gate was not down. He passed over the N & W tracks and drove toward the Conrail tracks at approximately 20 miles per hour. At this time, a Conrail train was approaching the crossing from the northwest on the westernmost Conrail track, traveling at ten to twelve miles per hour. The train thus came toward Thomas from his right, at a forty-five degree angle from his line of sight. Thomas testified that, because the N & W signal was not activated, he was not looking for a train. His car hit the front of Conrail's lead engine, and Thomas suffered severe injuries to his jaw and right leg.

At the time of the collision, the weather was clear and the road was dry. The crossing was not well lit, although there were streetlights nearby. There was no moon that night. As to the visibility of Conrail's train, several Conrail employees testified that the train's headlight was on bright and that the engineer repeatedly sounded the train's horn as he neared the crossing. Both Thomas and the engineer testified, however, that tall bushes near the crossing between N & W's tracks and Conrail's would have obstructed Thomas's view of the approaching train.

The N & W signals facing Thomas as he entered the crossing were not working. Conrail's employees testified, however, that the Conrail signals and gate on the west side of the crossing were working. These signals included flashers focused toward traffic coming toward the crossing both from the east and from the west. Thomas said he did not notice the Conrail gate on the far side of the crossing from him because it was far to his left, across four lanes. Thomas also said eastbound traffic was coming toward him as he entered the crossing. The warning bell on Conrail's signal was ringing, but Thomas said a nearby factory made the area a noisy one.

At trial, Thomas showed that Conrail employees had known for some time that the N & W gate was not working. Thomas accordingly argued that Conrail was negligent in failing to repair the gate, as a contract with N & W allegedly entitled it to do, and in failing to post a flagman to warn drivers approaching from the east. Conrail in turn argued that Thomas was contributorily negligent in failing to see the train coming in time to stop. The jury found for Thomas, and this appeal ensues.

On appeal, Conrail raises six issues:

1) whether the trial court erred in allowing Thomas's attorney to testify at trial;

2) whether the trial court erred in admitting a photograph of the collision scene taken at night;

4) whether the trial court erroneously admitted a written contract between Conrail and N & W;

4) whether the trial court erred in denying Conrail's motion for a directed verdict;

5) whether the trial court erred in refusing to give Conrail's tendered instructions on Thomas's alleged contributory negligence in failing to look or listen for approaching trains; and

6) whether the trial court erred in refusing to give Conrail's tendered instruction on the factors to be considered in assessing Thomas's alleged contributory negligence.

### I.

Conrail first contends the trial court erred in allowing Thomas's attorney Donald Rice to testify at trial. Thomas's case depended in part on a 1950 agreement between the Pennsylvania Railroad and the Wabash Railroad—predecessors in interest to Conrail and N & W respectively. Under this agreement, if N & W's crossing gate malfunctioned and N & W failed to repair it within a reasonable time, Conrail had the right to make repairs. Rice testified that Conrail's attorney gave him a xerographic copy of this agreement, representing it to

be authentic. Conrail objected to this testimony, arguing that Rice should be barred from taking the stand unless he withdrew as Thomas's attorney.

Conrail depends on Indiana's Code of Professional Responsibility, Disciplinary Rule 5–102(A).

> If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).

The "circumstances enumerated" in D.R. 5–101(B) include situations where "the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony." D.R. 5–101(B)(2).

We note that Conrail cites no authority for the proposition that it is reversible error to allow an attorney to testify in contravention of D.R. 5–102(A). Nor are we convinced that Rice violated the rule by testifying. Rice's testimony was intended to establish the authenticity of the tendered agreement, clearly "a matter of formality" bearing only tangentially on the merits of the case. Further, in light of the representations of Conrail's attorney, Rice had "no reason to believe that substantial evidence [would] be offered in opposition to the testimony." In fact, no such contrary evidence was offered. Thus, this case clearly falls under D.R. 5–101(B)(2), an exception to the requirements of D.R. 5–102(A), on which Conrail relies. The trial court properly allowed Thomas's attorney to testify.

### II.

Conrail next claims the court erred in admitting plaintiff's exhibit nine, a night photograph of the intersection where

Thomas struck the train. This photograph and plaintiff's exhibit eight, which was admitted without objection, were taken some time after the collision. They depict traffic stopped at the crossing at night as a train approaches. Both photographs were taken from the westbound side of the street, on which Thomas was traveling before the collision. Conrail challenges exhibit nine here on the grounds that it does not accurately depict the scene as it appeared on the night of the collision. Conrail points out that, in identifying the photograph, Thomas said "[it] looks like intersection at night. Only three things wrong." Conrail also notes that exhibit nine is darker than exhibit eight, so that only lights and signs are visible in it. Thus, Conrail argues, exhibit nine is inaccurate and should not have been admitted. Conrail also argues that exhibit nine is so dark and unclear that it had no probative value.

▮ Generally, photographs introduced in conjunction with a witness's testimony are not admitted as direct evidence of the things depicted but only to help the jury visualize what the witness's testimony describes. In such cases, the photograph essentially becomes a part of the witnesses's testimony. *See Haven v. Snyder,* (1931) 93 Ind.App. 54, 176 N.E. 149. Accordingly, such photographs are admissible, within the limits of relevancy, upon a showing that they truly and accurately portray the things depicted. *Bray v. State,* (1982) Ind., 430 N.E.2d 1162. "However, not every discrepancy between a photograph and its subject warrants the photograph's exclusion; few photographs would ever be admitted under so stringent a requirement." *Gill v. State,* (1977) 267 Ind. 160, 166, 368 N.E.2d 1159, 1162. Rather, a photograph will be admissible so long as the discrepancies between it and its subject are not materially misleading either because they are minor or because the witness explains them "in such a way that the jury would not be misled." *Id.* Whether a photograph is admissible under this standard is a matter for the trial court's discretion. *Thornton v. Pender,* (1978) 268 Ind. 540, 377 N.E.2d 613.

▮ Here, Thomas said exhibit eight reasonably depicted the intersection as it appeared on the night in question and that it would aid him in describing the scene to the jury. He then said that the same things would be true of exhibit nine, the photograph at issue here, except that there were "only three things wrong." Although Thomas should have given an explanation of these discrepancies before the photograph was admitted, he refrained from discussing any discrepancies in exhibits eight and nine upon the objection of Conrail's attorney that such testimony should come in after the photographs were admitted. Parties may not take advantage of errors which they invite or which are the natural consequence of their own neglect or misconduct. *Jolly v. Modisett,* (1971) 257 Ind. 426, 275 N.E.2d 780; *Plan-Tec, Inc. v. Wiggins,* (1983) Ind.App., 443 N.E.2d 1212; *State Board of Tax Commissioners v. South Shore Marina,* (1981) Ind. App., 422 N.E.2d 723. Thus, Conrail cannot now complain that Thomas did not adequately explain the differences between exhibit nine and the scene as it appeared to him. Indeed, Thomas was examined at length about the accuracy of these photographs after they were admitted. The court did not err in finding exhibit nine sufficiently accurate to be admitted under *Bray v. State, supra.*

As to Conrail's claim that this photograph was so unclear as to lack any probative value, we note that several cars are visible in it, as is the headlight of an approaching train. The street lights and crossing signals at the intersection are also visible. Thus, we cannot say this picture of the scene was so unclear as to lack probative value. The trial court did not abuse its discretion in admitting plaintiff's exhibit nine.

### III.

▮ Conrail also contends the trial court erred in admitting a copy of the contract governing the maintenance of the N & W signal at the crossing where Thomas

was injured. As noted above, this contract was authenticated by the testimony of Thomas's attorney, and it purported to bind the Pennsylvania Railroad and its successors, one of which was Conrail. Conrail argues this photocopied contract was hearsay and thus inadmissible.[1] This claim is meritless. A statement made out of court is objectionable as hearsay only when it is offered in court to prove the truth of the matter asserted, so that its value depends upon the credibility of the out-of-court asserter. *McClain v. State*, (1980) Ind., 410 N.E.2d 1297; McCORMICK, HANDBOOK of the LAW of EVIDENCE § 246 (2nd ed. 1972). Under this definition, evidence of "verbal conduct to which the law attaches duties and liabilities" is clearly not hearsay, so long as the out-of-court statement is being offered not for its truth but for its independent legal significance. *McCORMICK, supra* § 249. This exclusion of "verbal acts" from the hearsay rule obviously extends to a written contract offered in court not for the truth of any facts stated in it but to prove the existence of a contractual right or duty. *Id.* The written contract at issue here was offered solely to prove that Conrail had a contractual right to repair the malfunctioning N & W signal; thus, it was not hearsay. The court properly admitted it in evidence.

### IV.

Further, Conrail argues the trial court erred in denying its motion for a directed verdict at the close of all evidence. Specifically, Conrail claims it was entitled to judgment because Thomas was contributorily negligent as a matter of law. Because Conrail had the burden of proving contributory negligence, its posture on appeal is that of one appealing a negative judgment. Thus, on review, we will consider all the evidence in the light most favorable to Thomas, and we will reverse only if the undisputed evidence leads inescapably to the conclusion that Thomas was contributorily negligent. *Hundt v. La-Crosse Grain Co.*, (1983) Ind., 446 N.E.2d

327; *Board of Commissioners v. Nevitt,* (1983) Ind.App., 448 N.E.2d 333.

Conrail first contends the undisputed evidence conclusively shows Thomas failed to exercise reasonable care for his own safety in light of the surrounding circumstances, and that this contributory negligence was a proximate cause of Thomas's injuries. We disagree. It is well settled that, because a railroad crossing is a known place of danger, drivers entering a crossing must exercise reasonable care for their own safety. *Gasich v. Chesapeake & Ohio Railroad*, (1983) Ind.App., 453 N.E.2d 371; *Grand Trunk Western Railroad v. Briggs*, (1942) 112 Ind.App. 360, 42 N.E.2d 367. This includes a duty to look and listen for an approaching train, to a reasonable extent. *Pennsylvania Railroad v. Mink*, (1966) 138 Ind.App. 311, 212 N.E.2d 784; *Grand Trunk Western Railroad v. Briggs*, *supra*.

In stating this standard of care, some courts have even found a presumption of contributory negligence in certain cases:

> It is a requisite to the exercise of ordinary care by one about to go over a railroad grade crossing that he look both ways and listen attentively, and if by looking he could have seen, and if by listening he could have heard an approaching train in time to avoid collision, it is presumed, if such collision occurs, that he either did not look and listen or did not heed what he saw and heard, in either of which events he is guilty of contributory negligence.

*Gasich v. Chesapeake & Ohio Railroad, supra*, at 375 (quoting *Baltimore & Ohio Southwestern Ry. v. Rosborough*, (1907) 40 Ind.App. 14, 18, 80 N.E. 869, 870); *Chesapeake & Ohio Ry. v. Williams*, (1943) 114 Ind.App. 160, 51 N.E.2d 384. We note that our supreme court has apparently rejected this statement of the law, on the grounds that the question of contributory negligence always depends on the particular facts presented and may not be settled by

1. On appeal, Conrail does not challenge the authenticity or relevancy of this document.

resort to presumptions of law. *Baltimore & Ohio Railroad v. Reyher*, (1939) 216 Ind. 545, 550, 24 N.E.2d 284, 285–86; *see New York Central Railroad v. Wyatt*, (1962) 135 Ind.App. 205, 184 N.E.2d 657. Nevertheless, no matter how the standard of care is defined, we are not persuaded that the undisputed evidence in this case compels the conclusion that Thomas's injuries were proximately caused by his failure to exercise reasonable care.

██ Conrail relies heavily on testimony indicating that Thomas did not carefully look both ways before crossing Conrail's tracks. Even if Thomas had looked attentively both ways, however, there is room for doubt whether he would have seen the train. Thomas's duty of reasonable care did not include a duty to look at any precise place or distance from the tracks, but only to look when and where such observations might reasonably be effective. *Pettibone v. Howard*, (1941) 218 Ind. 543, 34 N.E.2d 12; *Pennsylvania Railroad v. Mink, supra.* Testimony favorable to Thomas indicated that tall bushes along Conrail's tracks close to the crossing were thick enough to have obstructed his vision. The collision occurred on a moonless night, at a poorly-lit intersection. Conrail's engine was dark in color. Further, although the engine had its headlight on, the light was focused far down the track, making it less obvious from Thomas's point of view. On these facts, we cannot say as a matter of law that Thomas would have seen Conrail's train if he had been keeping a reasonable lookout.

Nor can we say that the warnings of the train's approach were such that no reasonable person could have been unaware a train was coming. Evidence at trial showed that the N & W crossing gate and signal governing Thomas's lane of travel were not working when Thomas entered the four-track crossing. There was evidence that Conrail's own signal flashers, located on either side of the road on the side of the four-track crossing opposite Thomas as he approached, were working. There was no clear testimony, however, that the Conrail signal on Thomas's side of

the road was flashing. The other Conrail signal, attached to a gate governing eastbound traffic, was undeniably working. There is some doubt, however, whether Thomas should reasonably have seen it. Thomas testified that eastbound traffic was coming toward him as he entered the crossing. The headlights of these cars might have made the Conrail signal to Thomas's left hard to see. Moreover, this signal was on the far side of a five lane road from Thomas. Thus, Thomas's failure to notice this signal and heed its warning was arguably not unreasonable under the circumstances.

Similarly, we are not persuaded that Thomas's failure to hear the train's horn or the crossing signal bell conclusively establishes contributory negligence. Thomas testified that a nearby factory made the area noisy, and he indicated that he did not hear the bells or the train's horn. There was no testimony to show how loud these signals would be to one traveling in Thomas's lane. Thus, after reviewing the evidence, we are not convinced that it leads inescapably to the conclusion that Thomas's injuries resulted from his failure to exercise reasonable care for his own safety by looking and listening for oncoming trains.

As a separate basis for its claim that it was entitled to a directed verdict, Conrail argues that the undisputed evidence shows Thomas was contributorily negligent *per se* because he violated Ind.Code 9–4–1–106 (1982), which provides as follows:

Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty (50) feet but not less than ten (10) feet from the nearest track of such railroad and shall not proceed until he can do so safely, when:

(a) A clearly visible electric or mechanical signal device gives warning of the immediate approach of a train.

(b) A crossing gate is lowered or when a human flagman gives or continues to

give a signal of the approach or passage of a train.

(c) A railroad train, as defined in this act, approaching within approximately one thousand five hundred (1,500) feet of a highway crossing emits a signal audible for such distance and such train, by reason of its speed or nearness to such crossing, is an immediate hazard.

(d) An approaching train is plainly visible and is in hazardous proximity to such crossing.

Conrail contends there was undisputed evidence proving Thomas violated subsections (a), (c), and (d) of this section.

The evidence discussed above belies this contention. As to subsection (d), it has been held that a determination whether an approaching train was "plainly visible" depends on whether it would have been plainly visible to a person exercising reasonable care under all the circumstances. *Pennsylvania Railroad v. Mink, supra.* There was evidence that Conrail's train was hard to see because of tall bushes and poor lighting; thus, it was for the jury to decide whether the approaching train was "plainly visible" within the meaning of Ind.Code 9–4–1–106(d). Likewise, as noted above, there was room for doubt whether any of the four signal flashers was "clearly visible" and "gave warning" that a train was coming within the meaning of subsection (a). Finally, as to subsection (c), there was no dispute that the train gave an audible signal as it approached the intersection. There was no evidence, however, that this horn was audible for a distance of 1,500 feet as the statute requires. Absent such evidence tending to prove the train's horn was so clearly audible that Thomas should have heard it, we cannot say as a matter of law that he violated any part of Ind.Code 9–4–1–106.

Conrail also claims Thomas was contributorily negligent as a matter of law because he did not have his headlights on as he approached the crossing. The testimony on this point, however, was not undisputed. Conrail's engineer testified that Thomas's headlights were off. Thomas, on the other hand, said he was positive he had them on. The resolution of this dispute was a matter for the jury.

In conclusion, after reviewing all the evidence, we cannot say that it is undisputed or that it leads inescapably to the conclusion that Thomas's injuries were proximately caused either by a failure to exercise reasonable care or by any breach of statutory duty. As the discussion above illustrates, the question of contributory negligence in this case depended on an evaluation of many factors. The weighing of these factors was properly left to the jury. We hold that the evidence does not as a matter of law show Thomas's injuries were the result of his contributory negligence. The trial court properly denied Conrail's motion for a directed verdict.

### V.

Conrail next asserts the trial court erred in refusing Conrail's tendered instructions six and seven. These instructions would have told the jury that one approaching a crossing must look and listen for approaching trains and that Thomas should be presumed to have been contributorily negligent if by looking and listening he would have discovered the train was coming in time to avoid a collision. It is not error to reject a tendered instruction if its substance is covered by the instructions given or if it is not supported by the evidence. *Dahlberg v. Ogle,* (1978) 268 Ind. 30, 373 N.E.2d 159. The trial court here gave an instruction tendered by Conrail stating that Thomas had a "duty of exercising reasonable care in looking and listening for an approaching train" and that Thomas could not recover from Conrail if his failure to exercise reasonable care in this regard caused or contributed to his injuries. Conrail's instructions six and seven went beyond this instruction only in telling the jury that, if they found Thomas had collided with a clearly visible or audible train, they could presume that he had failed to look and listen for a train. This evidentiary presumption, however, was superfluous in light of the undisputed evidence that Thom-

as was not looking for a train at the crossing, since he saw the crossing gate was not down. Thus, to the extent that Conrail's instructions six and seven was not covered by the instruction given, they were unnecessary in light of the evidence at trial. Thus, the court's refusal to give these instructions was at worst harmless error.

## VI.

Finally, Conrail claims the court erred in refusing Conrail's tendered instruction ten. This instruction would have enumerated for the jury some of the specific facts they could consider in deciding whether Thomas was guilty of contributory negligence. The court gave other instructions, however, stating that the question of contributory negligence depended on the facts and circumstances of the case. Although these instructions were less elaborate than Conrail's tendered instruction ten, they adequately covered the same legal principle. We cannot agree that the refusal of this instruction coupled with the court's giving of an instruction enumerating factors the jury could consider in assessing Conrail's negligence unduly de-emphasized the issue of contributory negligence or led the jury to believe that the specific facts of this case were relevant to the issue of negligence but not to contributory negligence. Under *Dahlberg v. Ogle, supra,* the court did not err in refusing Conrail's tendered instruction ten.

The trial court's judgment is affirmed.

MILLER, J., and SHIELDS, J. (sitting by designation), concur.